188 P.2d 247

GATES et al. v. KILCREASE.

No. 4881.

Supreme Court of Arizona.

Dec. 22, 1947.

Laney & Laney, of Phoenix, for appellants.

Robert Denton, of Casa Grande, and Snell, Strouss & Wilmer, of Phoenix, for appellee.

BLAKE, Superior Judge.

This is an appeal from a judgment in a suit brought under the Declaratory Judgment Act, Code 1939, § 27-701 et seq., refusing an injunction to plaintiff-appellants to compel defendant-appellee to refrain from the practice of optometry. The case was tried to the court without a jury.

A brief statement of the facts is as follows: At the time of bringing this action in the Superior Court of Pinal County in April, 1944, and for some time prior thereto and since said time, defendant V. W. Kilcrease, a licensed osteopathic physician, was engaged in Casa Grande and Coolidge, Pinal County, Arizona in the practice of optometry.

This phase of his practice consisted of employing objective and subjective means and methods, other than the use of drugs, to determine the refractive powers of the human eye, and the visual and muscular anomalies thereof; prescribing and adapting lenses or prisms for correction or relief, and thereby prescribing and fitting eyeglasses to aid the power of vision of persons patronizing him.

Defendant did not claim the right to practice optometry by having obtained a license to so practice under the Optometry Act, but did and does claim authority to practice optometry by reason of being a licensed Osteopathic Physician under Section 67-1407, A.C.A., 1939, being a part of article 14 regulating optometry, which section provides as follows:

"This article shall not apply to *physicians* licensed to practice under the laws of this state * * *." (Emphasis supplied.)

The defendant takes the position that he is a "physician" licensed to practice under the laws of Arizona within the meaning of the word "physician" as used in the above code section; that, therefore, the statutory provisions requiring a person to be licensed as an optometrist before doing the acts defined as practicing optometry have no application to him; and that his license to practice osteopathy entitled him to engage in the business of prescribing and furnishing eyeglasses in the manner defined in the statute as constituting the practice of optometry.

The appellants make the following Assignments of Error:

"Assignment of Error No. 1. The appellants assign as error the holding of the lower court that the word 'physician' as used in Section 67-1407, A.C.A., 1939, exempting physicians licensed to practice under the laws of Arizona from the requirements of Article 15, Chapter 67, A.C.A. 1939, includes 'osteopathic physicians' licensed to practice as such under the laws of Arizona."

"Assignment of Error No. 2. The appellants claim that the court erred in holding that a person merely licensed to practice as an osteopath is 'lawfully' entitled to employ objective and subjective means and methods other than the use of drugs to determine the refractive powers of the human eye, and the visual and muscular anomalies thereof, and to prescribe and adapt lenses or prisms for the correction and relief of anomalies of the human eye, and to prescribe and fit eyeglasses to aid the power of vision of persons seeking aid for hire, * * *, all without complying with the requirements of Article 15, Chapter 67, A.C.A. 1939."

"Assignment of Error No. 3. The appellants assign as error the trial court's refusal to grant an injunction as prayed for in the plaintiff's complaint."

"Assignment of Error No. 4. The appellants assign as error the court's refusal to enter its declaratory judgment establishing that a license to practice osteopathy in the State of Arizona does not authorize the licensee to engage in the practice of optometry, and that no person other than a medical doctor licensed as such is authorized to practice optometry, unless he has a license issued under the Optometry Act."

The assignments of error raise but one question, and that is whether the defendant, who is a licensed osteopathic physician, is authorized to practice optometry without obtaining a license under the Optometry Act.

The decision must turn upon a statutory construction of the meaning of the word "physician" as used in the Optometry Act, Section 67-1407.

The appellants' position is that a person licensed to practice osteopathy is not a "physician" within the meaning of that word as used in code Section 67-1407, above quoted, and that a license to practice os-

teopathy does not authorize one to practice optometry.

Appellants contend that adjudicated cases have decided this question adversely to the osteopaths, holding that the legislature had used the words "physician" and "surgeon" as applying to those practicing medicine and surgery as contradistinguished from those practicing osteopathy.

As the outset it must be conceded that the reported cases seem to sustain plaintiffs' position, and, if these decisions were based upon like statutes and the same statutory background, then stare decisis, at least, would not warrant a contrary position.

[redacted] Appellants have stated that our Optometry Act was taken from California and, therefore, the interpretation placed upon it by the courts of California should be adopted in Arizona. On the contrary, however, we believe the question must find its answer by looking to what our Legislature has seen fit to encompass in the word "physician." This directs our attention to the laws describing and governing such practitioners and then interpreting the word "physician" in the optometry statute in question with these in mind.

There appears to be no certainty as to what state our statute governing such practitioners comes from, nor have the briefs given us complete comparative statutes from the other states on which the decisions relied upon are based. Other than this, however, both appellants and appellee have given us the benefit of the history of our own statutes governing the practice and licensing of medical and osteopathic practitioners in Arizona, which has been helpful to us. These statutes have been changed from time to time on this subject.

We do not deem it necessary to refer to all the past laws enacted by our legislature on the subject, except insofar as such past laws bear upon the intent and meaning of the legislature as to the scope and meaning of the present exception of physicians as to whether it includes osteopaths along with medical doctors as being exempt from the license requirement of the Optometry Act.

Our law which regulates the licensing and practice of medicine is now Section 67-1101 et seq., which is substantially the same as that of the 1928 Revised Code and the 1913 Revised Statutes. This law originally set up a Board of Medical Examiners consisting of five members, being licensed graduate practitioners, as follows: Two members from the allopathic; one from the homeopathic; one from the electic, and one from the osteopathic schools of medicine.

The present law, Section 67-1101, provides the Board of Medical Examiners shall consist of five members. Four members shall be graduates of schools recognized by the American Association of Medical Colleges, and one shall be a graduate of a recognized School of Osteopathy.

The law further provides that three forms of certificates be issued by said

332

Board of Examiners: First, a certificate authorizing the holder thereof to practice medicine and surgery; second, authorizing the practice of osteopathy, and third, a reciprocity certificate. Under this law, the applicant for a certificate to practice medicine and surgery is required to file with the Board of Examiners satisfactory testimonials of good moral character and a diploma issued by some legally chartered school of medicine. Applicants for a certificate to practice osteopathy are subject to the same regulations, except that instead of the diploma from a school of medicine they are required to file a diploma from a legally chartered college of osteopathy.

Under this law, the appellee was examined for his license to practice as an osteopathic physician. He took the identical examination taken by those seeking a license to practice as medical doctors. The qualifications required were identical with respect to an osteopathic physician and a medical doctor. The applicants for certificates as osteopathic physicians, or as medical doctors were identified by number only when they took the examination, and the identical questions on identical subjects were given to all applicants. And as a result of this examination, the appellee was issued a certificate by said Board of Medical Examiners to practice osteopathy within the State of Arizona.

In the above law, Section 67-1102, the practice of medicine was and is defined as follows:

"A person shall be regarded as practicing medicine who shall, by any indication, or statement, claim his ability or willingness to, or does, diagnosticate, or prognosticate, any human ills; or claims his ability or willingness to, or does prescribe or administer any medicine, treatment or practice; or performs any operations, or manipulation, or application for compensation therefor, except it be in usual practice of dentistry, midwifery, or pharmacy, or in the usual business of opticians, or of vendors or dental or surgical instruments, apparatus and appliances. *Practicing medicine shall include the practice of osteopathy.*" (Emphasis supplied.)

It would seem that at all times our legislature has classified osteopaths with medical doctors, until a separate Board was established in 1941. The Osteopath Act which was passed by the legislature in 1941 set up a somewhat different Board of Examiners and methods of examination of osteopaths, but the qualifications and requirements were not materially changed. The appellee complied with and obtained an Osteopathic Physician and Surgeon's Certificate, as authorized by said Act, without taking any additional examination.

Section 15 of the original Osteopathy Act as found in the 1941 Session Laws of Arizona at page 66 provided as follows:

"Persons holding a license under this act shall observe and be subject to all state and municipal laws and regulations relative to reporting births and deaths and in

all matters pertaining to public health, and have equal rights and privileges with physicians and surgeons of other schools of medicine relative to the treatment of cases and the holding of public office or position, and their reports shall be accepted by the officers of the department to which the same are made, with like force and effect."

In 1942 the legislature amended Section 15 of the Osteopathy Act, which is now Section 67-2115, 1945 Supplement to A.C.A., 1939, to read as follows:

"Persons holding a license under this act shall observe and be subject to all state and municipal laws and regulations relative to reporting births and deaths, and to all other matters pertaining to public health. No osteopathic practitioner shall be permitted to do major surgery under the provisions of this act unless he has had subsequent to his fulfillment of all other requirements of this act at least two (2) years of surgical internship in a hospital or hospitals approved either by the American Osteopathic Association or by the American Medical Association; and then such practice of major surgery shall be only in osteopathically-owned or controlled hospitals or institutions."

Appellants contend that the word "physician" as used in the Optometry Act means medical doctors and does not mean persons who may characterize themselves as "osteopathic physicians" or "naturopathic physicians" or "chiropractic physicians."

Section 67-1205 of the Naturopathy Act defines naturopathy as a "system of treating the abnormalities of the human mind and body by the use of drugless and non-surgical methods * * *."

Section 67-704 of the Chiropractic Act provides that the licensee under the Act "may adjust by hand any articulations of the spinal column, but may not prescribe for or administer any medicine or drugs, practice major or minor surgery, obstetrics, or any other branch of medicine, nor practice osteopathy. * * *"

Section 67-2101 of the Osteopathy Act defines osteopathy as meaning "that system of treatment and healing of abnormalities of the human mind and body as taught and practiced in the standard colleges of osteopathy recognized by the American Osteopathic Association."

Under the original law and the Osteopathy Act, the licensee, or the osteopath, was authorized to practice medicine, and we find under Section 67-2103 of the amended Osteopathy Act that the "practice of medicine * * * by persons authorized under the (previous) laws of this state * * * shall in no way be affected by the provisions of this act." We further find that under Section 67-2115 of the amended act, the osteopath is authorized to practice minor surgery.

From the above, it seems that the practitioner of naturopathy and chiropractic is limited to non-surgical and non-

medical methods, while the osteopathic practitioner is placed more nearly on an equal with the medical physician.

Appellants suggest that in the commonly accepted use of the English language, a physician refers to a medical doctor. While that statement may be true, it seems apparent that the legislature of Arizona had no such conception. The legislature in its various Acts has provided equal qualifications and requirements in licensing of medical doctors and osteopaths; has provided that the practice of medicine shall include the practice of osteopathy; has referred to one practicing osteopathy, both in statute and in certificate, as an osteopathic physician; has provided that osteopaths may practice medicine and minor surgery, and that after two more years in a properly approved hospital, can practice major surgery in osteopathically controlled hospitals or institutions. It does not seem consistent that the legislature in the Optometry Act, excepting "physicians" from the provisions of that Act, intended to include medical physicians and exclude osteopathic physicians.

The adjudicated cases in the states referred to by appellants seem to restrict the osteopathic profession to the narrow limits of practice as contained in the definition of osteopathy given long years ago and cannot be upheld under our statutes which have held the practice of osteopathic physicians on an almost equal plane with the medical physician. In any event the legislature has exempted "physicians" from the provisions of the Optometry Act and we cannot hold that it intended differently from what it has said. Any recourse is with the legislative department of the State of Arizona.

To strengthen this position, the Narcotics Act of Arizona in Section 68-802 defines a physician to be "a person licensed to practice medicine, or osteopathy * * *." The Osteopathy Act, Section 67-2115, provides that "Persons holding a license under this act shall observe and be subject to all * * * laws * * * relative to reporting births and deaths * * *." Public health laws under Section 68-304 provide that "Every physician shall report * * * the death of *. * * his patients dying * * * of any contagious * * * disease. * * *," and under Vital Statistics, Section 68-609, a certificate of birth shall be made by the physician or other person in attendance upon a birth. It is not consistent with reason that the criminal code of Arizona in providing penalties for certain acts of a physician would exempt an osteopathic physician. Likewise, under the statute of Privileged Communication, Code 1939, § 23-103, the patient of an osteopathic physician would be given protection identical with that of the patient of a medical physician.

It seems that through our legislative history and background, the word "physician" has been employed in its generic and broad sense, and the intent to include osteopathic

physicians seems to be clear. We cannot say that the legislature intended the word "physician" in the Optometry Act to include only the medical physician and exclude the osteopathic physician.

The judgment of the lower court is affirmed.

STANFORD, C. J., and La PRADE, J., concur.

UDALL, J., having disqualified himself as he was the trial judge, Honorable BENJAMIN BLAKE, Superior Court, Graham County, was called to sit in his stead.