204 P.2d 478

**STATE v. JACOBS.**

No. 988.

Supreme Court of Arizona.

April 5, 1949.

Lewkowitz & Wein and Charles C. Stidham, all of Phoenix, for appellant.

Evo DeConcini, Atty. Gen., Edward Jacobson, Asst. Atty. Gen. and Francis Donofrio, County Atty., of Phoenix, for appellee.

STANFORD, Justice.

Appellant was charged by information filed in the superior court with the crime of practicing dentistry without a license, a misdemeanor. Appellant waived trial by jury, and following trial and conviction he appealed to this court from the pronouncement of judgment and sentence.

The facts are: The complaining witness, William Hodgkinson, called at the office of appellant in Tempe, Arizona, on or about the 16th day of January, 1948, and asked for appellant and inquired of him if he took impressions for false teeth. He also inquired about the price and in answer the appellant told him that he would take such impressions and that his price would be $75 for the two plates. Hodgkinson was seated in a chair and appellant Jacobs mixed some paste in a bowl, afterwards putting it into form for the lower gums, and he then told Hodgkinson to put it in his mouth and press down hard. It was left there for a few minutes until it became hard, then appellant put his fingers in the mouth of Hodgkinson and took the form out. This process was repeated for the upper gums. The appellant then left the room for two or three minutes and upon returning told Hodgkinson that that would be all for that time and that he could come back in two hours. Hodgkinson informed him he could not return until the next morning. On his first visit Hodgkinson paid appellant $25 and took a receipt for same. The receipt reads as follows:

"Jan. 16, 1948

Mr. Hodgkinson
| | |
|---|---|
| Paid | 25.00 |
| Balance | 50.00 |

　　　　Dr. R. L. Nichols
　　　　By Paul R. Jacobs"

When Hodgkinson returned the next day he was handed some wax forms for both upper and lower gums and told to put them in his mouth. Hodgkinson told appellant that the lower wax form felt loose and he

was told to return the following Tuesday which he did. Various delays then ensued, but Hodgkinson returned on January 27th and 30th. We quote his testimony as to what later occurred:

" * * * and I came back on the 4th of February and he took another impression of my gums. He put the forms in my mouth and pressed them down on my gums, including the upper and lower. He held them there until they got hard, and took them out and told me to come back February 5th and he would have my teeth ready for me. I went back February 5th and tried them out. I said the lower set of teeth kind of hit on the left side of the gum. I showed him. He pressed down on my gum and said, 'Is that the place' I said 'yes.' He had some instrument there that looked like he filed them. I put them in my mouth again. He said, 'Wear them home. Don't eat anything tonight with them. In three weeks you will be adjusted to those teeth, but if they cause you any soreness, come over again, but don't wait too long. I paid him that day $50, and he gave me a receipt for the same.

*　　*　　*　　*　　*　　*

"Mr. Lewkowitz: Did you, Mr. Hodgkinson meet Dr. Nichols? A. Never saw him.

"Q. Do you know him now? A. No, I wouldn't.

"Q. Don't know him at all? A. No, sir.

"Q. This gentleman who sits behind me, this man, Dr. Nichols, you say he wasn't in the room at the time you first went over there? A. He was not.

"Q. And that he wasn't there at any of the time that any of the things that you say took place? A. No, he wasn't.

"Q. You say it wasn't under his direction that this form, the impression tray, was prepared and used? A. Mr. Jacobs done all the work. * * * "

Appellant submits seven assignments of error alleged to have been committed by the trial court. However we are able to determine the case from the assignments challenging the sufficiency of the evidence to sustain the judgment. The first assignment is:

" * * * said evidence showed that the defendant was engaged in dental laboratory work and did work in the instant case under the direction and by the authority of Dr. Nichols, a licensed osteopathic surgeon."

Appellant places great reliance upon the case of Gates v. Kilcrease, 66 Ariz. 328, 188 P.2d 247, which involved an interpretation of the Optometry Act in a declaratory judgment action. We there held that Dr. Kilcrease, who was a licensed osteopathic physician, was a "physician" within the meaning of the exception clause, section 67-1407, A.C.A. 1939, of that Act and hence did not require a license to practice op-

tometry. If Dr. Nichols were the defendant in this action we then would have a similar situation and it would be necessary to determine whether an osteopath came within the exception to the license requirements set forth under section 67-905(f), A.C.A.1939, but such a question is not presented by this record. However let us assume that Dr. Nichols was entitled to practice dentistry, clearly the acts performed by the appellant upon the person of complaining witness Hodgkinson could not possibly bring the appellant, as an unlicensed person, within exception section 67-905(c), A.C.A.1939, reading in part: "An unlicensed person from performing for a licensed dentist merely *mechanical work upon inert matter* in the construction, making, alteration, or repairing of any artificial dental substitute or any dental restorative or corrective appliance, * * *" (Emphasis supplied), as his work was directly upon a living person and not upon inert matter.

To further depict the conditions under which these parties operated an exhibit offered in evidence shows that on a door which a person faces entering the reception room are these two signs:

"Paul R. Jacobs
Dental
Laboratory
— Walk in —
Hours
11 AM to 6:30 PM

Dr. R. L. Nichols
Physician & Surgeon
Come
In."

Dr. Nichols testified with reference to the transactions with complaining witness Hodgkinson that he did not see him in the office on the occasion when he had his teeth made and fitted. He also said he didn't examine his mouth, and, in answer to the question, "Q. You weren't there when Mr. Jacobs took the impression of Hodgkinson's mouth, were you?" he replied, "A. I don't remember that particular point; I could have been in the work room.

*    *    *    *    *    *

"Q. Do you practice dentistry yourself? A. I don't practice dentistry in the strictest sense.

"Q. Do you have a license to practice dentistry? A. No.

*    *    *    *    *    *

"Q. Now did you receive any of this $75 which Hodgkinson paid to Paul Jacobs here? A. I did.

"Q. How much of that did you receive? A. I bought those dentures for $60 and I resold them for seventy-five."

Witness Nichols also testified that he had never seen a receipt for any money until the date of the trial, and still further testified:

"Q. And you didn't examine the mouths of these patients or even see them? A. I didn't examine this particular case.

"Q. You didn't examine Mr. Hodgkinson's mouth? A. That is correct. I did not."

Our section 67-903, A.C.A.1939, under the heading of "Who deemed to be practicing dentistry" in part reads:

"A person shall be deemed to be practicing dentistry who, by himself or by an agent, employee, servant, or contractor, for fee, compensation, emolument, or reward, direct or indirect, received or expected to be received by himself or another person, and, with specific reference and application to the teeth, gums, jaws, oral cavity, or tissues adjacent thereto, in living persons, shall do or propose, agree, or attempt to do, or make an examination or give an estimate of cost with intent to:

\* \* \* \* \* \*

"(c) Take an impression;

\* \* \* \* \* \*

"(h) Construct, make, alter, or repair an artificial substitute or restorative or corrective appliance; \* \* \*".

Section 67-905 (c) and (f), A.C.A.1939, in part, reads:

"Exceptions.—Nothing in this act shall be construed to prohibit:

\* \* \* \* \* \*

"(c) An unlicensed person from performing for a licensed dentist merely mechanical work *upon inert matter* in the construction, making, alteration, or repairing of any artificial dental substitute or any dental restorative or corrective appliance, when the casts or impressions for such work have been furnished by a licensed dentist and the work is directly supervised by the dentist for whom done or under a written authorization signed by him, but the burden of proving such written authorization or direct supervision shall be upon the person charged with the violation of this provision; (emphasis supplied)

\* \* \* \* \* \*

"(f) Nor to abridge a license issued under the laws of this state relating to medicine or surgery."

Appellant's second assignment of error is: " \* \* \* said evidence conclusively showed that the defendant received no compensation or reward of any kind or nature from the complaining witness for any of the acts set forth in 67-903, A.C.A. 1939, the Code Section defining acts which are deemed to be practicing dentistry."

The receipts given to Hodgkinson by the appellant were already stamped and printed with the defendant's and Dr. Nichols' names. The money was taken by appellant and a receipt given by him. Dr. Nichols testified that he bought the dentures for $60 and sold them for $75 which

234

would indicate that Dr. Nichols received $15 and the appellant received $60 from the transaction. Dr. Nichols also testified that he had never seen the receipts for the money until he saw them at the time of trial.

Speaking again of the first assignment of error, the court was justified in finding that appellant did definitely take the impressions for fitting plates to the gums of the complaining witness, to say nothing of whether he made and constructed them. In either respect, however, the act or acts do not come under the exceptions mentioned in section 67-905, supra. Dr. Nichols testified that he did not examine the mouth of Mr. Hodgkinson, but the testimony shows that appellant did fit and adjust the plates in his mouth, and he, Jacobs, therefore and thereby exceeded his rights and was practicing dentistry without a license.

Both the law and the evidence support the conviction of appellant in this case, and accordingly the judgment of conviction is affirmed.

UDALL and PHELPS, JJ., concur.

Due to illness, the Chief Justice did not participate in determining this appeal.

DeCONCINI, J., former Attorney General, announced his disqualification.