WALTER E. VEST, M. D. *et al.*

*v.*

GLENN E. COBB

(CC 803)

Submitted April 28, 1953. Decided July 15, 1953.

662

Lovins, Judge, dissenting.

*T. D. Kauffelt*, Assistant Attorney General, *C. S. Worrell, Kirke W. Dale*, Arkansas City, Kan., for plaintiffs.

*Arthur R. Kingdon, Clarence E. Martin, Jr., Joseph M. Sanders* and *Jerome Katz*, for defendant.

Riley, Judge:

In this certified case, coming here upon certificate of the Circuit Court of Wyoming County, Walter E. Vest, M. D., N. H. Dyer, M. D., W. P. Bittinger, M. D., D. D. Daniel, M. D., George F. Evans, M. D., Frank J. Holroyd, M. D., Cecil B. Pride, M. D., Calvin E. Bruce, D.S.C., Elsworth R. Johnson, D.S.C., R. E. Tripp, D. C., F. W. Remick, D. C., as members of and constituting The Medical Licensing Board of West Virginia, and R. C. Hatfield, M. D., John E. Sproles, M. D., E. M. Wilkinson, M. D., Coy T. Upchurch, M. D., and F. J. Zsoldos, M. D., filed in the Circuit Court of Wyoming County, West Virginia, their bill of complaint against the defendant, Glenn E. Cobb, a licensed osteopathic physician and surgeon, seeking to enjoin the defendant from administering and prescribing drugs, medicine and narcotics to and for his patients and from performing surgery. An amended and supplemental bill of complaint charged that the defendant on several occasions had used drugs, medicine, narcotics, and operative surgery in the treatment of his patients, contrary to the provisions of Code, 30-3, regulating the practice of medicine and surgery, and Code, 30-14, regulating the practice of osteopathy; that in doing so the defendant has unlawfully usurped the powers and privileges of plaintiffs; and thereby has caused and will continue to cause plaintiffs irreparable injury in the practice of their profession from an economic and monetary standpoint.

The defendant demurred to the amended and supplemental bill of complaint on the grounds that: (1) The amended and supplemental bill of complaint failed to state a cause of action; and (2) as a licensed osteopathic physician and surgeon, practicing the art of healing in West Virginia, defendant is authorized to administer and prescribe drugs, medicine and narcotics and perform surgery; and possesses, and is entitled to exercise, the same rights and privileges, as physicians and surgeons of other schools of medicine in the treatment of cases.

The circuit court overruled defendant's demurrer, and upon its own motion certified to this Court these questions:

"*First:* That the provisions of Article 14, Chapter 30, Code 1931, authorize and empower the defendant Glenn E. Cobb (who was in 1946 licensed thereunder to practice medicine and surgery in this State as an osteopathic physician and surgeon), to prescribe and administer narcotic and other drugs and medicines and to perform surgery by cutting and the use of instruments, in the treatment of his patients, in the same manner and to the same extent as physicians and surgeons of other schools of medicine licensed under the provisions of Article 3, Chapter 30, Code 1931, as amended; and

"*Second:* That the provisions of Chapter 151, Acts of the Legislature 1951, authorize and empower the defendant Glenn E. Cobb (who was in 1946 licensed under authority of Article 14, Chapter 30, Code 1931, to practice medicine and surgery in this State as an osteopathic physician and surgeon), to prescribe and administer narcotic and other drugs and medicines and to perform surgery by cutting and the use of instruments, in the treatment of his patients, in the same manner and to the same extent as physicians and surgeons of other schools of medicine licensed under the provisions of Article 3, Chapter 30, Code 1931, as amended."

So the case has been certified to this Court solely for the purpose of testing whether an osteopathic physician and surgeon, duly licensed under Code, 30-14, may administer and prescribe drugs, medicine and narcotics, and perform surgery in the State of West Virginia in the same manner and to the same extent as physicians and surgeons of other schools of medicine.

The only error assigned on this certificate is that the trial court erred in overruling defendant's demurrer to the amended and supplemental bill of complaint. Thus, in effect, the circuit court held that the defendant, as an osteopathic physician and surgeon, is not authorized to administer and prescribe drugs, medicine and narcotics, and perform surgery in the treatment of cases as physicians and surgeons are authorized to do under Code, 30-3, the statute regulating the practice of medicine by medical physicians and surgeons.

Counsel for plaintiffs and defendant, both in their oral arguments and briefs, have discussed the statutory law of this State, which, in the final analysis, will govern the decision in this case.

Chapter 11, Acts of the Legislature, Regular Session, 1915, established a State Department of Health; the office of Commissioner of Health; and the Public Health Council of West Virginia, consisting of the Commissioner of Health and six other members, who, as provided by Section 3, shall be graduates of a regular medical school and shall have had at least five years' experience in the practice of medicine.

Section 12 thereof, provided in part: "The public health council, * * * shall, in addition to the duties hereinbefore or hereinafter specified, examine all applicants for license for the practice of medicine and surgery in this state, and issue certificates of license to all applicants who are legally entitled to receive the same; and said certificates of license shall be signed by the president of the council and by the commissioner of health as secretary thereof."

Said Section 12 further provided that: "The term 'practice of medicine and surgery' as used by this act shall be construed to be treatment of any human ailment or infirmity by any method."

Later Section 1, Chapter 11, Acts of the Legislature, 1915, creating the State Department of Health, the office of Commissioner of Health, and the Public Health Council was incorporated in Code, 16-1-1; Section 3 of Chapter 11 of the statute was incorporated in Code, 16-1-3; and Section 12, Chapter 11 of the statute, providing that the public health council shall conduct examinations of applicants for license for the practice of medicine and surgery, was incorporated in Code, 30-3-5.

The parts of Code, 30-3, which may be pertinent to the decision in this case, are:

Section 2, which provides that "The term 'practice medicine and surgery,' as used in this article, shall be construed to mean the treatment of any human ailment or infirmity by any method"; and this section further provides that: "To open an office for any purpose or to announce to the public in any way a readiness to treat the sick or afflicted shall be deemed to engage in the practice of medicine and surgery within the meaning of this article: *Provided, however,* That the provisions of this article, * * *, shall not apply to * * * osteopathic physicians and surgeons, * * *."

Section 4, which in designating the persons qualified to practice medicine and surgery in this State, contains the following limiting clause: "The following persons and no others shall hereafter be permitted to practice medicine and surgery in this State: * * *", which limiting clause first appeared in the statutory law of this State in Section 9, Chapter 93, Acts of the Legislature, 1882, though, as originally enacted and for many years, it was limited to the "practice of medicine."

Section 5 provides that the public health council shall conduct examinations for the licensing of applicants to

practice medicine and surgery, and the manner of conducting such examinations. This section further provides that: "No applicant for license to practice medicine and surgery in this State shall be rejected because of his adherence to any particular school or theory of medicine."

Chapter 40, Acts of the Legislature, 1923, was the first statute in this State to define osteopathy; to authorize and regulate the practice of osteopathic physicians and osteopathic physicians and surgeons, independently of the regulation of the practice of medical physicians and surgeons, under Code, 30-3; to provide for the examination of applicants for the practice of osteopathy by three examiners, who shall be regularly licensed osteopathic physicians in good standing and who have engaged in the practice of osteopathy for a period of at least five years immediately prior to such appointment, which board of examiners was later, in Code, 30-14-3, designated as the "West Virginia Board of Osteopathy"; and to provide penalties for the violation of the statute, which act repealed all acts and parts of acts in conflict therewith. As Code, 30-14, regulating the practice of osteopathic physicians and surgeons, which was the applicable statute at the time defendant was licensed as an osteopathic physician and surgeon in 1946, incorporates in essential details the provisions of Chapter 40, Acts of the Legislature, Regular Session, 1923, it will be unnecessary in the decision of this case for us to recite in detail the provisions of Chapter 40, Acts of the Legislature, Regular Session, 1923..

At this point we shall refer only to the provisions of Code, 30-14, which seem to be pertinent to the decision in this case:

Section 1 provides that: "It shall be unlawful for any person to practice or offer to practice *medicine* as an osteopathic physician or osteopathic physician and surgeon in this State without a license issued by the state board of osteopathy: * * *." (Italics supplied).

Section 2 defines the word "osteopathy," as used in Article 14, as " * * * the name of that system of the healing art which places the chief emphasis on the structural integrity of the body mechanism as being the most important single factor in maintaining the well-being of the organism in health and disease."

Section 3 provides for the creation of a state board of osteopathy, known as the "West Virginia Board of Osteopathy", which shall consist of three osteopathic physicians in good standing, recommended by the state osteopathic association, who shall be appointed by the Governor, and who have been engaged in the practice of the profession for a period of at least five years prior to their appointment.

Section 4 provides that each applicant for examination by the West Virginia Board of Osteopathy shall (1) make application for examination on the blank forms prepared and furnished by the board; and (2) submit evidence, verified on oath and satisfactory to the board, that applicant is twenty-one years of age or over, and has received the preliminary and professional education required by Article 14.

Section 5 provides the standards of professional education required of applicants for a license to practice as an osteopathic physician and surgeon as follows: "To practice as an osteopathic physician and surgeon, the applicant shall be a graduate of a professional school or college of osteopathy recognized by the American osteopathic association, which requires as a prerequisite to graduation a four years' course of nine months each, covering the standard curriculum, as defined in section six of this article, and giving instruction in all the subjects necessary to educate a thoroughly competent general osteopathic practitioner."

Section 6 of Article 14 defines a school or college of osteopathy, and prescribes the required curriculum, as follows:

"The term school or college of osteopathy in good standing shall be defined as follows: A legally chartered osteopathic school or college requiring for admission to its course of study a preliminary education equal to the requirements for graduation of an accredited high school, and shall further require, before granting the degree of doctor of osteopathy, an actual attendance at such osteopathic school or college of at least thirty-six months, or four terms of nine months each, no two of which shall be given in any one year, its course of study to include the subjects and the minimum hours taught in each thereof as follows:

| Subject | Hours |
| --- | --- |
| Anatomy (descriptive, regional, applied, surgical and dissection) | 600 |
| Embryology | 70 |
| Chemistry (advanced to include organic and physiological chemistry and toxicology) | 300 |
| Histology | 180 |
| Physiology | 300 |
| Pathology | 240 |
| Bacteriology | 150 |
| Hygiene | 60 |
| Hydrotherapy | 16 |
| X-Radiance and electrical diagnosis | 36 |
| Dietetics | 32 |

Osteopathy:

   (a) Principles of Osteopathy;

   (b) Osteopathic technique;

   (c) Practice of osteopathy, to include diseases of nervous system, alimentary tract, heart and vascular system, genito-urinary diseases, ductless glands and metabolism, respiratory tract, bone and joint diseases, corrective gymnastics, acute and infectious diseases, pediatrics, dermatology, syphilis, psychiatry, diagnosis (physical, laboratory and differential), clinical practice, case recording 1466

Surgery with emphasis on fractures and
dislocations, principles of surgery, and
surgical diagnosis, orthopedics, orificial
and chemical _____ 400
Eye, ear, nose and throat_____ 180
Gynecology _____ 160
Obstetrics _____ 200
Professional ethics and efficiency_____ 16
Jurisprudence _____ 16

　　　　Total_____4422

"The number of hours herein prescribed for
the study of any subject may be reduced not
more than thirty per cent, but the total num-
ber of hours prescribed shall not be reduced.
The foregoing requirements shall be published
in each catalogue of such osteopathic school or
college."

Section 10 prescribes and sets forth the duties and
rights of osteopathic physicians and surgeons in the fol-
lowing language:

"Osteopathic physicians and surgeons shall
observe and be subject to all state and municipal
regulations relative to reporting all births and
deaths and all matters pertaining to the public
health, with equal rights and obligations as phy-
sicians of other schools of medicine, and such
reports shall be accepted by the officers of the
department to which the same are made.

"Osteopathic physicians and surgeons licensed
hereunder shall have the same rights as physi-
cians and surgeons of other schools of medi-
cine.

"Osteopathic physicians and surgeons licensed
hereunder shall have the same rights as physi-
cians and surgeons of other schools of medicine
with respect to the treatment of cases or the
holding of offices in public institutions."

The last paragraph of Section 12, Chapter 40, Acts
of the Legislature, 1923, the original statute dealing with
osteopathy, read: "Osteopathic physicians licensed here-

under shall have the same rights as physicians of other schools of medicine with respect to the treatment of cases or the holding of offices in public institutions." Not until the enactment of Code, 30-14-10, was that paragraph amended to include the words "and surgeons" after the word "physicians," in both places where the latter word appears.

When the defendant Cobb was licensed to practice osteopathy in 1946, Code, 30-3, provided for the qualification and licensing of physicians and surgeons; and Code, 30-14, for the qualification and licensing of osteopathic physicians and osteopathic physicians and surgeons.

After defendant was licensed to practice as an osteopathic physician and surgeon, Chapter 30 of the Code was amended by Chapter 97, Acts of the Legislature, Regular Session, 1949, in a number of particulars, including the addition thereto of a new article designated "Article 2-a", which created a medical licensing board to be known as "The Medical Licensing Board of West Virginia", consisting of eleven members, one of whom shall be the State Director of Health, ex-officio member, and ten other members who shall be appointed by the Governor with the advice and consent of the Senate. The amendment provided that the medical board shall be composed of six physicians or surgeons holding M. D. degrees, two chiropodists, and two chiropractors. Section 2 of Article 2-a provides that the medical licensing board shall assume, carry on and succeed to all of the duties, rights, powers, obligations and liabilities heretofore belonging to, exercised and assumed by the public health council with regard to the licensure of physicians and surgeons, chiropodists and chiropractors. Article 3 of Chapter 30, Code, was amended by Chapter 97, Acts of the Legislature, Regular Session, 1949, so as to substitute the medical licensing board for the public health council in the examination of applicants for license to practice medicine and surgery in this State, and for the

issuance of certificates of license to all successful applicants. Attention has been invited to this amendment of Code, 30, for the reason that the members of The Medical Licensing Board of West Virginia are plaintiffs to this suit. As the amendment neither creates new rights nor takes away vested ones, so far as the defendant is concerned, it applies to this case only in the limited way heretofore indicated, and does not contravene the rule against construing legislation as retroactive. *Lester* v. *State Compensation Commissioner*, 123 W. Va. 516, 16 S. E. 2d 920; *Consentina* v. *State Compensation Commissioner*, 127 W. Va. 67, 31 S. E. 2d 499.

When Chapter 40, Acts of the Legislature, Regular Session, 1923, providing for the first time for a state board of osteopathy and regulating the licensing and practice of osteopathic physicians and osteopathic physicians and surgeons, was enacted, Chapter 11, Acts of the Legislature, Regular Session, 1915, had already been enacted into the statutory law of this State. Section 12 of Chapter 11, provided that "The term 'practice of medicine and surgery' as used by this act shall be construed to be treatment of any human ailment or infirmity by any method." This provision was later incorporated *verbatim* in Code, 30-3-2, except that the word "of", appearing between the words "practice" and "medicine", in Section 12 of Chapter 11 was deleted, and the word "article" was substituted for the word "act."

In *State* v. *Morrison*, 98 W. Va. 289, 127 S. E. 75, this Court accepted the definition as to what constitutes the practice of medicine contained in the opinion of the Supreme Judicial Court of Massachusetts in the case of *Commonwealth* v. *Zimmerman*, 221 Mass. 184, 108 N. E. 98, Anno. Cas. 1916A, 858, as "Medicine relates to the prevention, cure, and alleviation of disease, the repair of injury, or treatment of abnormal or unusual states of the body and their restoration to a healthful condition. It includes a broad field. It is not confined to the administering of medical substances, or the use of surgical or other instruments. It comprehends 'a knowledge not only

of the functions of the organs of the human body, but also the diseases to which these organs are subject, and of the laws of health and the modes of living which tend to avert or overcome disease, as well as of the specific methods of treatment that are most effective in promoting cures.' "

Generally it may be said that, in the absence of statute, the practice of medicine is a general term, covering, as the Massachusetts Court said, a broad field. In the generic sense the word "medicine" is "the science and art dealing with the prevention, cure, or alleviation of disease." *State* v. *Borah*, 51 Ariz. 318, 76 P. 2d 757. In that the practice of medicine was open to all who desired to practice it in any of its branches, subject to liability for damages where the patient was injured by reason of the lack of skill of one practicing medicine, and subject, in some jurisdictions, to the right of the State to proceed by *quo warranto* to prevent an incompetent from following the art of healing. 41 Am. Jur., Physicians and Surgeons, Section 3; *State* v. *Borah, supra.* Thus at common law were it not for the statute regulating the practice of medicine by physicians and surgeons, Code, 30-3, as amended, and the statute, regulating the practice of osteopathy, Code, 30-14, as amended, the plaintiffs and the defendant, as well as all other citizens in this State, would be entitled to engage in the art of healing.

The common law right, however, for every citizen to engage in the art of healing, that is the practice of medicine, is not absolute or unqualified. That right is subject to the exercise of the police power of the State in the protection of the public health. *State* v. *Borah, supra; Lambert* v. *Yellowley,* 272 U. S. 581, 47 S. Ct. 210, 71 L. ed. 422, 49 A.L.R. 575; *People* v. *Witte,* 315 Ill. 282, 146 N. E. 178, 37 A.L.R. 672. In point 3 of the syllabus of the *Witte* case, the Supreme Court of Illinois held: "The right of a citizen to practice medicine is subject to the paramount power of the State to impose such regulations, within the limitations of the constitution, as may be required to protect the people against ignorance,

incapacity, deception or fraud in the practice of that profession, but the measures adopted must be reasonably necessary and appropriate to the accomplishment of legitimate objects within the domain of the police power."

The inherent object of statutes, such as Code, 30-3, regulating the practice of physicians and surgeons, and Code, 30-14, regulating the practice of osteopathic physicians and surgeons, is the preservation of the public health, but the measures regulating these professions, as well as other professions, the activities of which pertain to the public health, should be reasonably necessary and appropriate for the purpose for which the statutes were enacted. *People* v. *Kane,* 288 Ill. 235, 123 N. E. 265; *People* v. *Witte, supra.* Thus Chapter 93, Sections 9 and 15, Acts of the Legislature, 1882, relating to the qualifications of persons permitted to practice medicine in the State of West Virginia, has been held valid by this Court in *State* v. *Dent,* 25 W. Va. 1, and the decision in that case was affirmed by the Supreme Court of the United States in *Dent* v. *State of West Virginia,* 129 U. S. 114, 9 S. Ct. 231, 32 L. ed. 623. In *State* v. *Morrison, supra,* this Court held that the requirements of examination and license to practice medicine, contained in Sections 8A, 9, 10, and 11, Chapter 150, Barnes' Code, 1923, which was later incorporated in Code, 30-3, are constitutional; and in point 1 of the syllabus in the case of *Sloan* v. *Mitchell,* 113 W. Va. 506, 168 S. E. 800, this Court held: "The right of a licensed physician and surgeon to practice his profession is a valuable franchise in the nature of a property right * * *." To the same effect see *Dent* v. *West Virginia, supra* and *West Virginia State Medical Assn.* v. *Public Health Council of West Virginia and Its Members,* 125 W. Va. 152, 23 S. E. 2d 609.

Defendant, having been licensed to practice osteopathy in 1946, his license gave him the rights and privileges which were originally set forth in Chapter 40, Acts of the Legislature, 1923, which, with few changes not pertinent to the decision in this case, were incorporated in

Code, 30-14. Those rights and privileges, however, were not enlarged, as may be argued, by Chapter 151, Acts of the Legislature, 1951, amending Code, 30-14. Section 1, Chapter 151, Acts of the Legislature, 1951, expressly provides that: "any certificate of license heretofore issued under the laws of this state, authorizing its holder to practice osteopathy and surgery, shall in no way be affected by the enactment of this article;", except that the holder of a certificate of license to practice osteopathy, issued prior to the amendment and reenactment of Code, 30-14, by Chapter 151, "shall be subject to all of the provisions of this article respecting the requirements and obligations herein prescribed for the continuance in force of such certificate of license." These requirements and obligations are expressly set forth in Sections 10, 11 and 12 of Chapter 151.

Section 10 of Chapter 151, Acts of the Legislature, 1951, requires that all holders of certificates of license to practice as osteopathic physicians and surgeons must obtain an annual renewal license; that each holder of a license to practice as an osteopathic physician and surgeon shall annually take a two-day refresher course; and that the failure of the licensee to acquire an annual renewal license shall result in the suspension of all rights and privileges of the licensee further to practice as an osteopathic physician and surgeon. The fourth paragraph of Section 10 provides for the reinstatement of any licenses suspended because of the failure of the licensee to comply with the preceding paragraphs of said Section 10. Section 11 of Chapter 151 specifies the grounds upon which a license to practice as an osteopathic physician and surgeon may be refused, suspended or revoked; and Section 12 specifies certain acts, which if committed by a licensee practicing as an osteopathic physician and surgeon, will constitute a misdemeanor, and this section fixes the penalties for the conviction of any of the offenses specified therein.

Though the defendant, under Section 1, Chapter 151,

Acts of the Legislature, 1951, in order to retain his license, must comply with the provisions of Section 10 as to the completion of the two-day educational refresher course, and is subject to the obligations set forth in Sections 10, 11 and 12, of Chapter 151, the license which he acquired in 1946 to practice as an osteopathic physician and surgeon is not affected by the other provisions of Chapter 151. And, though Chapter 151, like Code, 30-14, under which defendant was licensed to practice as an osteopathic physician and surgeon, is remedial in the sense that it has as its overall purpose the preservation of the public health, it should be construed to be prospective in operation, in so far as defendant's license is concerned, under the rule prevailing in the Virginias that remedial statutes are not excluded from the general rule that retroactive or retrospective legislation is not favored, unless the statute expressly exhibits a legislative intent to the contrary. *Fowler* v. *Lewis' Adm'r,* 36 W. Va. 112, 14 S. E. 447; *Thomas* v. *Higgs,* 68 W. Va. 152, 69 S. E. 654, Anno. Cas. 1912A 1039; *Central Trust Co.* v. *Hall,* 106 W. Va. 687, 146 S. E. 825; *Ferguson* v. *Ferguson,* 169 Va. 77, 192 S. E. 774; *City of Richmond* v. *Supervisors of Henrico County,* 83 Va. 204, 2 S. E. 26.

As the statutes of the various states interpreted in the cases cited by counsel for the plaintiffs and defendant are variant and differ in essential details from the West Virginia statute, which deals with the licensing and regulation of the practice of osteopathic physicians and osteopathic physicians and surgeons, contained in Code, 30-14, it would serve no useful purpose in this opinion to discuss in detail all of the provisions of the statutes of other states and the decisions of the Courts of those States interpreting those statutes.

Counsel for the plaintiffs have cited as being most nearly in point with the instant case the case of *State ex rel. Beck, Attorney General* v. *Gleason,* 148 Kan. 1, 79 P. 2d 911; and counsel for the defendant has relied most strongly on the case of *Gates* v. *Kilcrease,* 66 Ariz. 328, 188 P. 2d 247.

In the *Gleason* case, which was decided in 1938, the Supreme Court of Kansas limited the right of osteopathic physicians in the performance of surgery, under the provisions of the osteopathic statute contained in Corrick, General Statutes of Kansas, Anno., 1935, Chapter 65, Article 12, Section 1, as surgery was taught and used as a part of the osteopathic system of healing, which consisted mainly of manipulation, but the Kansas Court held that osteopathic physicians are not entitled to enter into the general field of operative surgery, requiring the use of surgical instruments.

In *State* v. *Johnson,* 84 Kan. 411, 114 P. 390, decided in 1911, the Supreme Court of Kansas had under consideration Section 6, Chapter 254 of the Laws of Kansas, 1901, entitled "AN ACT to create a state board of medical registration and examination, and to regulate the practice of medicine, surgery and osteopathy in the state of Kansas, prescribing penalties for the violation thereof, and repealing Chapter 68 of the Session Laws of 1870", as amended by Section 1, Chapter 63, Laws of Kansas, Special Session, 1908. Section 6, as originally enacted in 1901, and as amended in 1908, provided, in part, that "All persons who practice osteopathy shall be registered and licensed as doctors of osteopathy, as hereinbefore provided, but they shall not administer drugs or medicine of any kind nor perform operations in surgery."

The Legislature of the State of Kansas by an Act entitled "AN ACT concerning the practice of osteopathy, creating a state board of osteopathic examination and registration, providing penalties for the violation of any of the provisions of this act * * * ", Chapter 290, Laws of Kansas, 1913, amended Sections 8087, 8088, 8090, 8091, and 8093 of the General Statutes of Kansas, 1909, compiled by Dassler, and repealed the original Sections 8087, 8088, 8090, 8091, and 8093 of the Laws of Kansas, 1909, and Section 1 of Chapter 297 of the Session Laws of Kansas, 1911.

The enactment of this Act served to delete from Sec-

tions 8087, 8088, 8090, 8091, and 8093, of the Laws of Kansas, 1909, the sections of the Kansas statutes governing medical registration and examination, all reference to the practice of osteopathy; and, specifically, Section 8090 was amended so that the provision of the Laws of Kansas, 1909, that " * * * They [all persons who practice osteopathy] shall not administer drugs or medicine of any kind nor perform operations in surgery", was deleted from the statutory law of that State, which provision was originally embraced in Section 6, Laws of Kansas, 1901, and the amendment thereof contained in Section 1, Chapter 63, Laws of Kansas, Special Session, 1908.

The Supreme Court of Kansas had under consideration in the *Gleason* case, the statute embraced in Chapter 65, Article 12, General Statutes of Kansas, Anno., 1935, which did not contain the prohibitory provisions contained in Section 6, Chapter 254, Laws of Kansas, 1901, as amended by Section 1, Chapter 63, Laws of Kansas, Special Session, 1908, and the General Laws of Kansas, 1909, that "all persons who practice osteopathy" shall not administer drugs or perform surgery; and from the omission of the prohibitory phrase contained in Section 6, as originally enacted in 1901, and as amended in 1908, and from Chapter 290, Laws of Kansas, 1909, the Supreme Court of Kansas reasoned that from such omission "it does not follow that thereby the legislature intended to confer unrestricted authority on osteopaths to administer drugs and perform operations in surgery." From this postulate it is further reasoned that "The science or system of osteopathy, generally speaking, strongly opposed the use of drugs as remedial agencies in treating the sick, afflicted or injured, and osteopathic schools and colleges of good repute contained no course for the study of materia medica; hence, there was no real occasion to prohibit osteopaths from using drugs, since they made no claim or pretense of doing so, nor did they study to qualify themselves for such use. Broadly speaking, theirs was a drugless system of healing." The Kansas

Court further reasoned: "So the word 'surgery', as used in this statute, meant, in the main, surgery by manual manipulation. The general use of a knife or other instruments in surgical operations was regarded as unnecessary and opposed to the osteopathic system of treatment."

We are unable to follow the reasoning of the Court in the *Gleason* case. Though the reasoning in that case may be sound, it is not in point with the case at bar. The Kansas statute under consideration by the Supreme Court of Kansas in the *Gleason* case, contains no provision defining the rights of osteopathic physicians and surgeons, such as is contained in Code, 30-14-10.

In the case of *Gates* v. *Kilcrease, supra,* decided in 1947, cited by counsel for the defendant as presenting the precise question now at bar, the Supreme Court of Arizona, in denying the injunctive relief sought that the defendant, a licensed osteopath, be restrained from practicing optometry, said at page 250 of the opinion: "The adjudicated cases in the states referred to by appellants (Plaintiffs) seem to restrict the osteopathic profession to the narrow limits of practice as contained in the definition of osteopathy given long years ago and cannot be upheld under our statutes which have held the practice of osteopathic physicians on an almost equal plane with the medical physician."

In the *Kilcrease* case the Supreme Court of Arizona had under consideration Sections 67-1101 to 67-1109, Article 11, Chapter 67, 5 Arizona Code, Anno., 1939, Official Edition, regulating the practice of medicine and surgery. In Section 67-1102 the statute provides that "Practicing medicine shall include the practice of osteopathy." However, when the Arizona Legislature enacted Chapter 121, Laws of Arizona, 1949, embraced in Sections 67-2121 to 67-2139, both inclusive, Article 21, Chapter 67, Arizona Code, Anno., 1939, Official Edition, which dealt exclusively with and regulated the practice of osteopathic physicians and surgeons and created a "state osteopathic board of registration and examination in

medicine and surgery", the statute was enacted to provide that " * * * no osteopathic physician or surgeon shall perform major surgery unless he has two (2) years of surgical training in a hospital approved for such training by the board, or shall demonstrate to the board equivalent training, and the board shall certify in writing to the applicant his right to perform major surgery before engaging in such duties."

Though counsel for defendant cites the *Kilcrease* case as involving a statute "strikingly similar with the one involved here", the statute under consideration by the Arizona Court in that case, Sections 67-1101 to 67-1109, Article 11, Chapter 67, 5 Arizona Code, Anno., 1939, Official Edition, did not provide, either expressly or in effect, as does Code, 30-14-10, that "Osteopathic physicians and surgeons licensed hereunder shall have the same rights as physicians and surgeons of other schools of medicine *with respect to the treatment of cases* or the holding of offices in public institutions." (Italics supplied). There is some similarity between the Arizona statute under consideration in the *Kilcrease* case and Code, 30-14. Section 67-1102, Article 11, Chapter 67 of the Arizona statute, provided that: "Practicing medicine shall include the practice of osteopathy", and defined the practice of medicine in the following language: "A person shall be regarded as practicing medicine who shall, by any indication, or statement, claim his ability or willingness to, or does, diagnosticate, or prognosticate, any human ills; or claims his ability or willingness to, or does prescribe or administer any medicine, treatment or practice; or performs any operation, or manipulation, or application for compensation therefor, except it be in usual practice of dentistry, midwifery, or pharmacy, or in the usual business of opticians, or of vendors of dental or surgical instruments, apparatus and appliances. * * *." Code, 30-14, in Section 1 thereof provides that: "It shall be unlawful for any person to practice or offer *to practice medicine* as an osteopathic physician or osteopathic physician and surgeon in this State without a license issued

by the state board of osteopathy: * * * ", (italics supplied) ; and Section 2 of Code, 30-14, defines the word "osteopathy", as used in Article 14, as that "system of the healing art which places the chief emphasis on the structural integrity of the body mechanism as being the most important single factor in maintaining the well-being of the organism in health and disease." However, the definition of osteopathy contained in Section 2, while it places the "chief emphasis on the structural integrity of the body mechanism", does not exclude in the practice of the art of healing the use of drugs, medicine or narcotics, or the performance of surgery. In Dorland's Medical Dictionary (1951) osteopathy is defined: "* * * utilizes generally accepted physical, medicinal and surgical methods of diagnosis and therapy while placing chief emphasis on the importance of normal body mechanics and manipulative methods of detecting and correcting faulty structure."

A careful examination of the statutes of other states, in so far as they deal with the regulation of osteopathic physicians and osteopathic physicians and surgeons, and the decisions of other jurisdictions interpreting those statutes, which have been cited to this Court in the able briefs of counsel for plaintiffs and defendants, have convinced us that the West Virginia statute, regulating the practice of osteopathy, contained in Code, 30-14, is *sui generis,* in that in essential details it differs from the statutes enacted in other jurisdictions. We are, therefore, at liberty, and it is our duty in deciding the very important controversy now before this Court, to consider the provisions of our own statute, contained in Code, 30-14.

Of the many statutes to which our attention has been invited in the briefs of counsel, none contains the provision contained in Code, 30-14-10, that "Osteopathic physicians and surgeons licensed hereunder shall have the same rights as physicians and surgeons of other schools of medicine with respect to the treatment of cases or the holding of office in public institutions."

Likewise Code, 30-14, unlike many of the statutes to which counsel have invited our attention, contains no restriction against the administration of drugs or the performance of surgery. Such a restriction, as heretofore indicated, was contained in Section 8090, Laws of Kansas, 1909, at the time the case of *State* v. *Johnson, supra,* was decided. Our own Legislature, in Code, 30-4-13, Code, 30-7-5, Code, 30-8-1, and Code, 30-16-11, providing, respectively, for the licensing of dentists, nurses, optometrists, and chiropractors, and for the regulation of the practice of dentistry, nursing, optometry, and chiropractic, placed certain restrictions as to the use of drugs and surgery on the licensees practicing those professions. If the Legislature in the enactment of Code, 30-14, had intended that licensed osteopathic physicians and osteopathic physicians and surgeons should be prohibited from prescribing and administering drugs, medicine and narcotics and performing surgery, it would have expressly so provided. This it did not do, and, having placed restrictions in Chapter 30 as to the practice of dentistry, nursing, optometry, and chiropractic, the fact that the Legislature did not in express language prohibit the use of drugs, medicine and narcotics or the performance of surgery by those engaged in the practice of osteopathy, though not controlling, strongly evinces a legislative intent that osteopathic physicians and osteopathic physicians and surgeons should not be prohibited from prescribing and administering drugs, medicine and narcotics, or performing surgery. Especially is this true in view of the fact that the prescribed curriculum set forth in Code, 30-14-6, embraces the study of anatomy (descriptive, regional, applied, surgical and dissection), embryology, chemistry (advanced to include organic and physiological chemistry and toxicology), histology, physiology, surgery with emphasis on fractures and dislocations, principles of surgery, and surgical diagnosis, orthopedics, orificial and chemical, obstetrics and pathology; and the curriculum prescribed in Code, 30-14-6, for the study of osteopathy includes diseases of the nervous

system, alimentary tract, heart and vascular system, genito-urinary diseases, ductless glands and metabolism, respiratory tract, bone and joint diseases, corrective gymnastics, acute and infectious diseases, pediatrics, dermatology, syphilis, psychiatry, and diagnosis (physical, laboratory and differential).

It is to be noted, however, that Code, 30-14-6, the statute governing this case, does not require as a condition precedent to the licensing of osteopathic physicians and surgeons a study of *materia medica* and pharmacology, as required by Section 5, Chapter 151, Acts of the Legislature, Regular Session, 1951. The Legislature, however, has the sole power to determine the policy of the laws which should be enacted for the protection of the public health; and, as held by the Supreme Court of Illinois, in *People* v. *Witte, supra,* unless statutes enacted by the Legislature invade constitutional rights, the determination of the Legislature in enacting such statutes is conclusive. The A.L.R. Annotation, pages 680-683, inclusive, of the *Witte* case, dealing with the "Constitutionality of statute prescribing conditions of practising medicine or surgery as affected by question of discrimination against particular school or method", is highly illuminative.

Code, 30-3, regulating the practice of medicine and surgery, and Code, 30-14, regulating the practice of osteopathy, were enacted within the police power of the State and have the common purpose of preserving the public health. These statutes, therefore, are remedial in their very nature, and should be liberally construed to effectuate their purpose. 17 M. J., Statutes, Section 72. And because Code, 30-3, and Code, 30-14, pertain to the same subject matter, namely the regulation of professions which deal with the public health, the statutes should be read in *pari materia,* unless the statutes exhibit an intent on the part of the Legislature that they should be separately construed. 2 Horack, Sutherland Statutory Construction, 3d ed., 5202. *Forquerean* v. *Donnally,* 7 W.

Va. 114; *Hays* v. *Harris,* 73 W. Va. 17, 80 S. E. 827; *State* v. *Reed,* 107 W. Va. 563, 149 S. E. 669; *State* v. *Hoult,* 113 W. Va. 587, 169 S. E. 241; *White* v. *Morton,* 114 W. Va. 29, 171 S. E. 762; *School Board of the City of Harrisonburg* v. *Alexander,* 126 Va. 407, 101 S. E. 349; *Commonwealth* v. *P. Lorillard Co.,* 129 Va. 74, 105 S. E. 683.

In the enactment of Code, 30-3, relating to the regulation of the practice of medicine and surgery, and Code, 30-14, relating to the regulation of the practice of osteopathy, the Legislature had the overall purpose, namely the preservation of the public health, and rather than exhibiting an intent on the part of the Legislature that the statutes should be construed separately, Code, 30-14-10, evidences the clear legislative intent that the two statutes should be read in *pari materia.* Section 10 provides in imperative language that:

> "Osteopathic physicians and surgeons licensed hereunder shall have the same rights as physicians and surgeons of other schools of medicine.

> "Osteopathic physicians and surgeons licensed hereunder shall have the same rights as physicians and surgeons of other schools of medicine *with respect to the treatment of cases* or the holding of offices in public institutions." (Italics supplied).

Unless Code, 30-14, is construed in *pari materia* with Code, 30-3, the above-quoted language of Section 10, Article 14, would be meaningless. Standing by itself, this language lends itself to no practical application.

Though in the construction of a statute the primary rule is that a statute should be construed, if possible, to effectuate the legislative intent, (*State ex rel. Holbert* v. *Robinson,* 134 W. Va. 524, 59 S. E. 2d 884; *State ex rel. Cosner* v. *See,* 129 W. Va. 722, 42 S. E. 2d 31; *State ex rel. Lawhead* v. *Kanawha County Court,* 129 W. Va. 167, 38 S. E. 2d 897) there is also a secondary but cardinal rule of construction that a statute should be construed

as a whole, so as to give effect, if possible, to every word, phrase, paragraph or provision thereof, but such rule of construction should not be invoked so as to contravene the true legislative intent. *State ex rel. Churchman* v. *Hall,* 86 W. Va. 1, 102 S. E. 694; *State* v. *Jackson,* 120 W. Va. 521, 199 S. E. 876; *State ex rel. Holbert* v. *Robinson, supra;* and *State ex rel. Watson* v. *Rodgers,* 129 W. Va. 174, 39 S. E. 2d 268.

Because the quoted provisions of Code, 30-14-10, have no meaning unless reference is had to Code, 30-3, for the purpose of determining the rights which physicians and surgeons of the school of medicine have, the last two paragraphs of Code, 30-14-10, which provide that osteopathic physicians and surgeons licensed under Article 14 shall have the same rights as physicians and surgeons of other schools, and, in particular, the last paragraph of Section 10, which expressly specifies that such rights relate to "the treatment of cases or the holding of offices in public institutions", Section 10 evidences a clear legislative intent that for the interpretation of the provisions thereof reference should be had to Code, 30-3, relating to the practice of physicians and surgeons, and where a statute makes reference to another statute or statutes, the former should be read in *pari materia* with the latter. A general postulate of the law governing the construction of a statute or sections thereof is succinctly stated in 50 Am. Jur., Statutes, Section 350: "Statutes or sections which expressly refer to each other, are in pari materia." To the effect that a statute may refer to another statute and incorporate it, or a part thereof, by reference, and that such reference statute is complete in itself so as not to violate the constitutional provision, such as that contained in West Virginia Constitution, Section 30, Article VI, that: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title", see 2 Horack, Sutherland Statutory Construction, 3d ed., Section 5207.

The rule governing the construction of reference stat-

utes, as stated in 50 Am. Jur., Statutes, Section 350, and 2 Horack, Sutherland Statutory Construction, 3d ed., Section 5207, was applied by this Court in the rather recent case of *Chapman* v. *Huntington, West Virginia Housing Authority,* 121 W. Va. 319, 3 S. E. 2d 502, in which this Court read and construed the United States Housing Act in conjunction with the West Virginia Housing Act, as though the provisions of the former act were incorporated in the latter act.

Prior to the enactment of Chapter 40, Section 12, Acts of the Legislature, Regular Session, 1923, the Legislature had already enacted and had not repealed Chapter 11, Acts of the Legislature, Regular Session, 1915, entitled "AN ACT to create a state department of health, defining its powers and duties; to change the name of the state board of health, and limit and define its duties; to amend the public health laws; to invest the department of health with the management and control of the state tuberculosis sanitarium; to provide penalties for violation; and to appropriate money for purposes of public health." Section 12, Chapter 11, Acts of the Legislature, 1915, provided: "* * * The term 'practice of medicine and surgery' as used by this act shall be construed to be treatment of any human ailment or infirmity by any method." The precise language of this provision, except for the deletion and substitution of the words heretofore indicated, was incorporated in Code, 30-3-2.

Important among the rules governing statutory construction is: The Legislature is presumed to know of its prior enactments when it enacts subsequent legislation. In *State* v. *Jackson,* 120 W. Va. 521, pt. 1 syl., 199 S. E. 876, this Court held: "In the enactment of a statute the Legislature must be presumed to have acted with full knowledge of the provisions of all prior statutes dealing with the same subject matter." *State* v. *Hinkle,* 129 W. Va. 393, 41 S. E. 2d 107; *Berkeley County Court* v. *Keedy,* 124 W. Va. 408, 20 S. E. 2d 468.

Code, 30-14-10, which deals with the rights of osteo-

pathic physicians and surgeons, and in particular with their relation to the treatment of cases or the holding of offices in public institutions, and the above-quoted provision of Section 12, Chapter 11, Acts of the Legislature, Regular Session, 1915, which provided that physicians and surgeons shall have the right to treat " * * * any human ailment or infirmity by any method", deal with the same subject matter, namely the preservation of the public health. The former, contained in Acts of the Legislature, 1923, Chapter 40, and later incorporated in Code, 30-14-10, as heretofore indicated, refers to the provision contained in Section 12, Chapter 11, Acts of the Legislature, Regular Session, 1915, as that is the only provision in the statutory law of this State dealing with the rights of physicians and surgeons in the treatment of any human ailment or infirmity.

Under the rule of statutory construction just stated the Legislature, when it enacted Chapter 40, Acts of the Legislature, 1923, is presumed to have known of the provisions of Section 12, Chapter 11, Acts of the Legislature, Regular Session, 1915; and unless there are other provisions of Code, 30-3, which would indicate a contrary intention on the part of the Legislature, Code, 30-14-10, should be construed to mean that osteopathic physicians and surgeons shall have the same rights as physicians and surgeons under Code, 30-3, that is, they have the right, to use the language employed in Section 12, Chapter 11, Acts of the Legislature, Regular Session, 1915, and Code, 30-3-2, to treat "any human ailment or infirmity by any method", which right includes the right to administer and prescribe drugs, medicine and narcotics, and perform surgery.

But counsel for plaintiffs forcibly argue that even if Code, 30-14-10, dealing with the rights of osteopathic physicians and surgeons should be construed in *pari materia* with Code, 30-3-2, dealing with the rights of physicians and surgeons, osteopathic physicians and surgeons are not permitted to treat "any human ailment or

infirmity by any method", as physicians and surgeons of the school of medicine are under Code, 30-3-2. This position is based upon (1) the limiting clause, contained in Code, 30-3-4, which specifies in detail the persons who are permitted to practice medicine and surgery, which clause reads: "The following persons and no others shall hereafter be permitted to practice medicine and surgery in this State: * * *"; and (2) the proviso contained in Code, 30-3-2, that "Provided, however, that the provisions of this article [Article 3], with the exceptions of sections eight [which inhibits the division of fees by physicians and surgeons, and prescribes the penalties therefor, and provides for the revocation of certificates licensing such physicians and surgeons to practice in this State] and ten [which provides the penalty for use, in obtaining a license to practice medicine and surgery, of a false diploma from a medical school], shall not apply to * * * osteopathic physicians and surgeons, * * *."

The language limiting the persons who are permitted to practice medicine in this State, that is, "The following persons and no others shall hereafter be permitted to practice medicine in this State, * * *", is found in Section 9, Chapter 93, Acts of the Legislature, 1882. Later Section 9, while retaining the above-quoted limiting language, was incorporated in Warth's Amended Code of 1884, Chapter CL, Section 9. Though Section 9 was later amended by Chapter XXII, Acts of the Legislature, Regular Session, 1889; Chapter 7, Acts of the Legislature, Regular Session, 1895; Chapter 66, Acts of the Legislature, Regular Session, 1907; Chapter 136, Regular Session, Acts of the Legislature, 1921; Chapter 39, Acts of the Legislature, 1923; and Chapter 75, Acts of the Legislature, 1929, there was no further amendment of the limiting language contained in Section 9, as originally enacted by Chapter 93, Acts of the Legislature, 1882, until Section 9 was incorporated in Code, 30-3-4, in which the limiting language was amended to apply expressly to the practice of surgery, as well as the practice of medicine, that is the language was revised to read: "The following

persons and no others shall hereafter be permitted to practice medicine and surgery in this State: * * *."

The limiting language contained in Code, 30-3-4, that:

"The following persons and no others shall hereafter be permitted to practice medicine and surgery in this State: * * * " is clear and all-inclusive. If standing alone, this language evidences a clear legislative intent that one licensed simply to practice as an osteopathic physician and surgeon shall be precluded from administering and prescribing drugs, medicine and narcotics, and from performing surgery. But, as hertofore indicated, Code, 30-14-10, which serves to make the rights of osteopathic physicians and surgeons coextensive with the rights of physicians and surgeons of other schools of medicine, including physicians and surgeons under Code, 30-3, was of statutory origin, subsequent to the enactment of Section 12, Chapter 11, Acts of the Legislature, 1915, which contained the provision later, as amended, incorporated in Code, 30-3-2, that "The term 'practice medicine and surgery', as used in this article, shall be construed to mean the treatment of any human ailment or infirmity by any method."

Section 12, Chapter 40, Acts of the Legislature, 1923, which for the first time defined "osteopathy", and authorized and regulated the practice of osteopathic physicians and osteopathic physicians and surgeons, contained no provision exempting those practicing osteopathy from the operation of the Act. At the time Chapter 40, Acts of the Legislature, Regular Session, 1923, was passed on April 25, 1923, Section 9, Chapter 39, Acts of the Legislature, Regular Session, 1923, passed on April 12, 1923, provided: " * * * at such examination [the examination conducted by the public health council], written and oral questions shall be submitted for the applicants for license, covering all the essential branches of the sciences of medicine and surgery, and the examination shall be a thorough and decisive test of the knowledge and ability of the applicants. The president and secretary of the

public health council shall issue certificates to all who successfully pass the said examination and to all those [whose] certificates said public health council or a majority of them shall accept in lieu of an examination as hereinbefore provided, *except that in all the certificates issued to applicants who adhere to the osteopathic school it shall appear that it is for the practice of osteopathy, and such certificates after being duly recorded as hereinafter provided, shall be deemed licenses to practice medicine, surgery and osteopathy in all their branches in this state.*" (Italics supplied). Section 9, Chapter 39, Acts of the Legislature, Regular Session, 1923, was amended by Chapter 75, Acts of the Legislature, Regular Session, 1929, which amendment did not serve to delete from the statute the above-quoted and italicized provisions.

But the provision contained in Section 9, Chapter 39, Acts of the Legislature, Regular Session, 1923, relating to examination and licensing by the public health council of applicants to practice osteopathy, and the provision that certificates issued by the public health council "shall be deemed licenses to practice medicine, surgery and osteopathy in all their branches in this state", was not incorporated in Code, 30-3.

The Legislature in the enactment of Code, 30-3-2, by deleting the provision contained in Section 9, Chapter 39, Acts of the Legislature, 1923, and by inserting in Code, 30-3-2, the provision, in the nature of an exception, that *"Provided, however,* That the provisions of this article, * * *, shall not apply to osteopathic physicians and surgeons, * * * "*, in our opinion, evidenced a clear legislative intent to provide that osteopathic physicans and surgeons, and the other specified professions, are not to be governed by the provisions of Code, 30-3. The Legislature evidently intended in the enactment of Code, 30-3, and Code, 30-14, to provide separate systems for the licensing and regulation of the practice of physicians and surgeons and of osteopathic physicians and surgeons.

However, the fact that the Legislature by the enact-

ment of Code, 30-3, and Code, 30-14, intended to provide separate systems of licensing and regulation does not justify this Court in inferring that the Legislature by the enactment of Code, 30-3-2, intended to emasculate the provision of Code, 30-14-10, defining the rights of osteopathic physicians and surgeons.

. To summarize we hold that Code, 30-3, should be read in *pari materia* with Code, 30-14, and that if the limiting language, contained in Code, 30-3-4, that "The following persons and no others shall hereafter be permitted to practice medicine and surgery in this State: * * *", should be deemed inconsistent with the provision of Code, 30-14-10, providing that osteopathic physicians and surgeons shall have the same rights as physicians and surgeons of other schools of medicine, and the same rights "with respect to the treatment of cases or the holding of offices in public institutions", the statutes being in *pari materia*, should be construed, as it is possible to do in the instant case, so that none should fail. *W. S. Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15; *Piedmont Finance Corp.* v. *Commonwealth*, 146 Va. 287, 135 S. E. 673; *City of Hopewell* v. *Norfolk & Western Railway Co.*, 154 Va. 19, 152 S. E. 537.

We therefore hold that under Code, 30-3, and Code, 30-14, read and construed in *pari materia* that the defendant, Glenn E. Cobb, having heretofore been duly licensed to practice as an osteopathic physician and surgeon, has the right in the practice of his profession to treat "any human ailment or infirmity by any method", as physicians and surgeons may do under Code, 30-3-2.

In so holding this Court fully realizes that this case involves a highly controversial question, in the solution of which the minds of the members of the medical and osteopathic professions may differ widely. We simply say that the Legislature originally in the enactment of Chapter 40, Acts of the Legislature, Regular Session, 1923, and later in the enactment of Code, 30-14, invoked,

as it had the right to do, the police power of the State. Whether the Legislature was well advised in so doing, it is not for this Court to say. This Court should not, and will not, control the policy of the Legislature in the valid exercise of the police power of the State pertaining to the public health. Our duty is simply to interpret the statutes of this State when they involve inconsistent provisions, and to apply the statutes when they are clear and unambiguous; and only where an Act of the Legislature contravenes the provisions of the Constitution of this State does it become the duty of this Court to declare a statute unconstitutional.

For the foregoing reasons the ruling of the Circuit Court of Wyoming County in overruling the defendant's demurrer to plaintiffs' bill of complaint is reversed, and the case is remanded to that court with directions that the defendant's demurrer to plaintiffs' bill of complaint be sustained, and, if plaintiffs do not desire to amend, that the bill of complaint be dismissed.

*Ruling reversed;*
*case remanded with*
*directions.*

LOVINS, JUDGE, dissenting:

I dissent from the conclusion set forth in the Court's opinion, I would affirm the Circuit Court of Wyoming County.

The issue on this certification is: May a member of one school of the healing art, educated according to the principles of such school, practice the healing art according to the principles of a different school of medicine and surgery, though licensed as a member of a different profession.

The practice of medicine and surgery is a generic term, covering as it does, all methods of healing the human body of defects and conditions resulting from a disease or casualty. There are different schools of the practice of medicine and surgery, most usual of which

are as follows: Allopathic, said to be an incorrect designation of a regular practitioner of medicine and surgery. "The term really means the curing of a diseased action by inducing a different kind of action in the body." The American Illustrated Medical Dictionary, Dorland, 21st Ed., page 75; the Eclectic School, "Designating a sect or school which professes to select what is best from all other systems of medicine." The American Illustrated Medical Dictionary, Dorland, 21st Ed., page 470. The Homeopathic School designates a system of therapeutics, the central principle of which is "that diseases are curable by those drugs which produce effects on the body similar to the symptoms of the disease; second that the effect of drugs is increased by giving them in minute doses * * * ". The American Illustrated Medical Dictionary, Dorland 21st Ed., page 672. Osteopathic, "A system of therapy in which diseases are treated by manipulations intended to restore the deranged mechanism of the body. The official definition of osteopathy adopted by the American Osteopathic Association is: 'That system of the healing art which places the chief emphasis on the structural integrity of the body mechanism, as being the most important single factor to maintain the well-being of the organism in health and disease.' " The American Illustrated Medical Dictionary, Dorland, 21st Ed., page 1037.

There may be other methods in the school of healing, some of which have a rational scientific basis, and others being somewhat connected with mysticism and superstition, have no such basis.

This suit relates to the claim and conduct of a member of the osteopathic school to prescribe drugs and perform surgery with instruments, as is the practice of the other three schools above named, the members of which prescribe drugs, using various therapeutic agencies known under the general term of *materia medica* and instruments in incising or excising parts of the human body.

In passing, it may be noted that under the decisions

of this Court, the practice of chiropractic, another school of the healing art, placing emphasis on the adjustment of the spinal vertebrae, is treated as the practice of medicine and surgery. *State* v. *Morrison,* 98 W. Va. 289, 300, 127 S. E. 75. See *Commonwealth* v. *Zimmerman,* (Mass.) 108 N. E. 893.

The power of the state to regulate and license the practice of the healing art has long been settled in this jurisdiction. *State* v. *Dent,* 25 W. Va. 1, affirmed by the Supreme Court of the United States in the case of *Dent* v. *State of West Virginia,* 129 U. S. 114; 9 S. Ct. 231, 32 L. Ed. 623.

At common law, any person had a right to practice medicine and surgery, subject to the qualification that persons who did so were liable for damages for lack of skill or incompetency or the sovereign could proceed by *quo warranto* to prevent irresponsible persons from practicing the art of healing. 41 Am. Jur., Physicians and Surgeons, Section 3.

In accordance with that and similar powers, the legislature enacted numerous statutes licensing various professions. Chapter 30, Code, as amended. The various articles of Chapter 30, Code, cover the following professions and callings of this state: Article 1, relates to the practice of professions generally; Article 2, to the licensing of attorneys at law; Article 3, of physicians and surgeons to practice medicine and surgery; Article 4, concerns the licensing of dentists and dental hygienists; Article 5, relates to the practice of pharmacy; Article 6, relates to the practice of embalming; Article 7, concerns the practice of nursing; Article 8, governs the practice of optometry; Article 9, relates to the practice of public accountancy; Article 10, covers the practice of veterinary medicine; Article 11, concerns the practice of chiropody; Article 12, relates to the practice of architecture; Article 13, covers the practice of engineering. The practice of osteopathy is controlled by Article 14.

Article 15, relates to the practice of midwifery; and Article 16, concerns the practice of chiropractic.

Each article in Chapter 30, as above noted, relates to different professions, and sets forth in some detail the duties, limitations and powers of the members of the professions and callings with which the statute deals.

A synopsis of the pertinent statutes will aid in an understanding of the rights of the parties to this suit. Section 1, Chapter 97, Acts of the Legislature, 1949, Regular Session, provides for the organization of a medical licensing board, consisting of eleven members including two chiropodists for licensing of persons practicing that profession. The medical licensing board has authority to issue license to physicians, surgeons, chiropractors and chiropodists. Section 2, Chapter 97 *id.*, Section 4, Article 3, Chapter 97 *id.* provides that only certain persons shall be entitled to practice medicine and surgery in this state. Licensed osteopaths are not named in Section 4, Chapter 97 *id.*, as being entitled to practice medicine and surgery. Such omission, according to the revisor's note appended to Section 4, is explained to the effect that Article 14 of Chapter 30, fully provides for the profession of osteopathy. Section 5, Chapter 97 *id.*, provides for examination, and further, that an applicant for a license to practice medicine shall not be refused a license because of applicant's adherence to any particular school or theory of medicine. Code, 30-3-9 provides a penalty for practicing medicine and surgery without a license.

Chapter 151 of the Acts of the Legislature, 1951, Regular Session, reenacted and amended Article 14, Chapter 30 of Code, 1931. Section 1, Article 14, Chapter 151, *id.* provides that "It shall be unlawful for any person to practice or offer to practice medicine and surgery as an osteopathic physician and surgeon in this state without a license issued by the West Virginia Board of Osteopathy." A proviso appears in Section 1 validating licenses, issued under the laws of this State, authorizing the holder to practice osteopathy and surgery. Section 2,

Article 14, *id*. defines osteopathy as follows: "For the purposes of this article, 'Osteopathy' shall mean that system of the healing art which places the chief emphasis on the structural integrity of the body mechanism as being the most important single factor in maintaining the well-being of the organism in health and disease;".

Section 3, establishes a board of osteopathy, consisting of three osteopathic physicians and surgeons. Section 5, provides for an examination for a license to practice medicine and surgery as an osteopathic physician and surgeon. Section 6, deals with the issuance of a license without examination. Sections 7 and 8 are not pertinent to the question here considered. Section 9, reads as follows: "Osteopathic physicians and surgeons licensed hereunder shall have the same rights and privileges as physicians and surgeons of other schools of medicine.

Osteopathic physicians and surgeons shall observe and be subject to all state and municipal regulations relative to reporting births and deaths and all matters pertaining to the public health with equal rights and obligations as physicians of other schools of medicine, and such reports shall be accepted by the officers of the department to which the same are made.

Osteopathic physicians and surgeons licensed hereunder shall have the same rights and privileges as physicians and surgeons of other schools of medicine with respect to the treatment of cases or the holding of health offices or offices in public institutions." Sections 10 and 11 are not pertinent. Section 13, is quoted herein in full. Section 14, relates to separability and Section 15, is a general repealer.

It would serve no purpose to set forth in full all of the various provisions of Articles 2-a, 3 and 14 of Chapter 30, as amended. It suffices to say that all of the provisions of those articles clearly indicate that the legislature intended that the profession of doctor of medicine and doctor of osteopathy should be regarded as separate professions.

We are here concerned only with the provisions of Code, 30-2a, 3 and 14, as amended. The provisions contained in 30-3 and 14 on the date of the adoption of the Code, became the law of this State, and all statutes, with certain exceptions and qualifications, were repealed, when the official Code of 1931 was enacted. Code, 63-1-1, 2, 3 and 4.

Code, 30-2a, 3 and 30-14, as amended, do not show any ambiguity in the language or expression of the legislative intent. Such statutory provisions, are clear, explicit and leave no room for construction. Though the statutes here considered do not, in my opinion, call for construction; nevertheless, it is not amiss, in view of the Court's opinion, to bear in mind a well established principle: "Legislative intention is the cardinal rule of statutory construction and ascertainment of that intention involves consideration of the subject matter of the legislation, *it* purposes, objects and effects in addition to its express terms." *State* v. *Robinson,* 134 W. Va. 524, 59 S. E. 2d 884, 888. "When a statute is clear and unambiguous, and legislative intent is plain, statute should not be interpreted by courts, * * * in such case duty of court is to apply statute, and in so doing, its words should be given their ordinary acceptance and significance and meaning commonly attributed to them." *State* v. *Epperly,* 135 W. Va. 877, 65 S. E. 2d 488, 492.

I do not disagree with that part of the opinion stating that remedial statutes, where construction is called for, are to be construed as prospective in operation. In fact, all statutes, in the absence of a legislative intent to the contrary, are prospective and not retrospective in their application. I fail to see, however, where the question of prospective or restrospective application of the statutes throws any light on the subject of this controversy.

Moreover, Code, 30-3 and 30-14 are clearly not to be read together, from the plain words of each of the statutes. *"Provided, however,* that the provisions of this article, with the exceptions of section eight and ten

(§§ 2873, 2875), shall not apply to dentists, dental hygienists, nurses, optometrists, chiropodists, osteopathic physicians and surgeons, midwives, or chiropractors, regularly licensed or registered as such under the provisions of this chapter applicable to such professions and occupations, in the practice of their respective professions and occupations; * * *". Code, 30-3-2, as amended by Chapter 123, Acts of the Legislature, 1947, Regular Session. A similar statutory provision, relative to licensing osteopaths reads as follows: "The practice of medicine and surgery by persons possessing the degree of doctor of medicine and authorized by the laws of this state to practice medicine and surgery shall in no way be affected by the provisions of this article." Chapter 151, Article 14, Section 12, Acts of the Legislature, 1951, Regular Session.

If statutes pertain to the same subject matter, i. e., to "the same person or thing, or to the same class of person or things, or have the same purpose or object.", they are considered to be in *pari materia*. Sutherland Statutory Construction, 3rd Edition, 5202. Articles 2-a, 3 and 14 of Code, 30, as amended, do not relate to the same class of persons, since Articles 2-a *id*. and 3 *id*. clearly relate to physicians and surgeons and Article 14, as amended, relates to osteopathic physicians and surgeons. Neither do they have the same specific purpose or object. Articles 2-a *id*. and 3 *id*. relate to the licensing of physicians and surgeons holding the degree of M. D.; Article 14 *id*. relates to the licensing of osteopathic physicians and surgeons. See Annotation on the subject of licensing and different kinds of treatment of diseases. 86 A. L. R. 623, *et seq*. It will be noted, upon examination of the foregoing Annotation, that no general rule may be stated, since the decisions relative to the restricted practice of medicine generally rest on statutes of various states. It is not amiss however, to say that the statutes of this state on the question of restricted practice of medicine and surgery are somewhat similar to the statutes of other states.

I think the above quoted portion of Code, 30, Articles 3 and 14, as amended, preclude consideration of Articles 2-a, 3 and 14, as amended, together, and in *pari materia*, I think that the quoted portions deal with physicians and surgeons having a degree of M. D., and Osteopathic physicians and surgeons separately, and, therefore, the three articles, as amended, should not be construed in *pari-materia*. True, the statutes deal with the art of healing, but with different schools and with different theories in the practice of the healing art. I think that the provisions of Section 9, Chapter 151, *id.*, giving to osteopathic physicians and surgeons the same rights and privileges of physicians of other schools of medicine is restricted to rights and privileges embraced within the osteopathic school of the art of healing, and should not be construed so as to give the osteopathic physicians and surgeons the rights bestowed upon persons holding a degree of doctor of medicine. Likewise, osteopathic physicians and surgeons within the proper sphere and according to the teaching of their school of medicine, should have equal rights; they should have equal obligations imposed upon them as is imposed upon physicians of other schools. But, to me, that does not mean that the osteopathic physician and surgeon may disregard the principles of his school.

As above noted, osteopathy does not contemplate the use of drugs or instruments in the practice of medicine and surgery. Certainly, the statute was enacted with that in view. If osteopathy does not contemplate the use of drugs and instruments, why should the legislature place in a statute an express inhibition against practices not contemplated in the principles of such school or system.

In the case of *State* v. *Gleason*, (Kan.) 79 P. 2d 911, the Supreme Court of Kansas had before it statutes somewhat similar to those of this state. The Kansas statute contained no inhibition preventing osteopaths from prescribing drugs and performing surgery. A former statute which had been repealed, contained such inhibition. The following language concerning the absence of such

inhibition is pertinent here: " * * * The science or system of osteopathy, generally speaking, strongly opposed the use of drugs as remedial agencies in treating the sick, afflicted, or injured, and osteopathic schools and colleges of good repute contained no course for the study of *materia medica;* hence, there was no real occasion to prohibit osteopaths from using drugs, since they made no claim or pretense of doing so, nor did they study to qualify themselves for such use. Broadly speaking, theirs was a drugless system of healing. Surgery, as well as obstetrics * * * and each of the other subjects in which osteopaths were required to take an examination, were taught in the osteopathic schools and colleges of good repute, in harmony with the osteopathic theory or system of healing, and not as taught in the medical colleges and universities. So the word 'surgery', as used in this statute, meant, in the main, surgery by manual manipulation. The general use of a knife or other instruments in surgical operations was regarded as unnecessary and opposed to the osteopathic system of treatment. * * *" It may be argued that the practice of medicine and surgery are now taught in the osteopathic schools, but the overall principle of osteopathy does not justify that practice.

The case of Gates v. Kilcrease, (Arizona) 188 P. 2d, is not persuasive in my opinion.

There is another significant situation. If osteopathic physicians and surgeons have the same rights, powers and duties as persons holding a degree of doctor of medicine, why should the legislature provide separate standards for the practice of medicine and surgery, and why should separate boards be provided for the examining and licensing of persons seeking to practice the two professions. That situation alone indicates to me that the legislature clearly intended and clearly expressed such intention to draw a line of demarcation between the two schools relating to the practice of medicine and surgery. Of course, manipulation of the members of the human body is a species of surgery, as evidenced by the foregoing definition of osteopathy from Dorland.

I think the distinction made by the statutory enactments between the two kinds of physicians and surgeons, and that certain powers, duties and obligations of licentiates, are confined to their respective professions or schools.

No doubt there is merit in all of the schools of medicine and it is to be hoped that the future will bring forth improvements, progress and advancement in all, so that the lot of humanity in general may be ameliorated.

I think that the statutes regulating the practice of medicine surgery and osteopathy have been improperly construed and misapplied in this suit, and therefore, I dissent.