# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2022 Term**

_____

No. 20-0492

_____

**FILED**
**January 28, 2022**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CITY OF MARTINSBURG,**
**Plaintiff Below, Respondent**

**V.**

**RACHEL DUNBAR,**
**Defendant Below, Petitioner**

_____

**Appeal from the Circuit Court of Berkeley County**
**The Honorable Michael Lorensen, Judge**
**Criminal Action No. CC-02-2020-M-AP-1**

**REVERSED AND REMANDED**

_____

**Submitted: January 4, 2022**
**Filed: January 28, 2022**

Dylan K. Batten
Riddell Law Group
Martinsburg, West Virginia
Attorney for the Petitioner

Floyd M. Sayre, III
Bowles Rice LLP
Martinsburg, West Virginia
Attorney for the Respondent

**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied.  The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard.  Questions of law are subject to a *de novo* review."  Syllabus point 1, *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

2.      "The rules for construing statutes also apply to the interpretation of municipal ordinances."  Syllabus point 1, in part, *Town of Burnsville v. Kwik-Pik, Inc.*, 185 W. Va. 696, 408 S.E.2d 646 (1991).

3.      "The primary rule of statutory construction is to ascertain and give effect to the intention of the [city council]."  Syllabus point 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953).

4.      "Refusal to identify oneself to a law enforcement officer does not, standing alone, form the basis for a charge of obstructing a law enforcement officer in performing official duties in violation of West Virginia Code § 61-5-17(a) (2001) (2002 Supp.).  However, the charge of obstructing an officer may be substantiated when a citizen does not supply identification when required to do so by express statutory direction or when

i

the refusal occurs after a law enforcement officer has communicated the reason why the citizen's name is being sought in relation to the officer's official duties." Syllabus point 4, *State v. Srnsky*, 213 W. Va. 412, 582 S.E.2d 859 (2003).

**Jenkins, Justice:**

This is an appeal by Rachel Dunbar ("Ms. Dunbar") from a June 5, 2020 conviction order of the Circuit Court of Berkeley County. In January of 2019, Detective Jonathan Smith ("Detective Smith") of the City of Martinsburg ("the City") went to the home of Ms. Dunbar to investigate a referral he had received regarding a potential fraudulent credit card charge associated with her address. Detective Smith, who was not wearing a uniform, did not initially identify himself as a law enforcement officer and it was not readily apparent that he was, in fact, a law enforcement officer.[1] Detective Smith asked Ms. Dunbar personal questions, including her name. In response, Ms. Dunbar gave a false name. Later, in the same conversation, Detective Smith informed Ms. Dunbar that he was

---

[1] The parties dispute as to when Detective Smith identified himself as a law enforcement officer. Specifically, Detective Smith alleges that he identified himself prior to inquiring as to Ms. Dunbar's name; however, Ms. Dunbar contends that Detective Smith informed her as to his identity after he asked her name. Despite this dispute, the circuit court found that

> Detective Smith asked [Ms. Dunbar] for her name. [Ms. Dunbar] responded by giving Detective Smith the name of "Danielle Shaffer". [sic] [Ms. Dunbar] further advised that no other tenant was on the lease with her. *Later in the conversation, Detective Smith informed [Ms. Dunbar] that he was a law enforcement officer with the City of Martinsburg Police Department.* After being informed that Detective Smith was a law enforcement officer investigating criminal activity, [Ms. Dunbar] did not provide Detective Smith with her real name.

(Emphasis added). Accordingly, the circuit court found that Detective Smith informed Ms. Dunbar of his law enforcement status after he asked her name. Neither party has appealed this finding.

1

a law enforcement officer. Upon further investigation, Detective Smith learned that Ms. Dunbar had given him a false name. Accordingly, Detective Smith arrested Ms. Dunbar days later for violating the City of Martinsburg Municipal Code section 509.05.[2] Ms. Dunbar was tried and convicted in municipal court. She appealed to the circuit court where a de novo bench trial was held. Again, Ms. Dunbar was found guilty of "knowingly provid[ing] false or misleading information to Detective Smith, a member of the City of Martinsburg Police Department[.]" On appeal to this Court, Ms. Dunbar asserts that the circuit court erred when it found that she was required to notify the law enforcement officer of her real name after learning that he was, in fact, a law enforcement officer.

Upon thorough review of the record, and upon careful consideration of the parties' briefs and oral arguments and the relevant law, we agree with Ms. Dunbar and find that the lower court erred. Therefore, we reverse the circuit court's June 5, 2020 conviction order and remand for further proceedings consistent with this opinion.

---

[2] Section 509.05 of the City of Martinsburg Municipal Code provides that "[n]o person shall, at any time intercept, molest, or interfere with any officer or member of the Martinsburg Police Department, while on duty, *or knowingly give false or misleading information to a member of the Department*." (Emphasis added). According to the circuit court, Ms. Dunbar was charged with knowingly giving false or misleading information.

# I.

## FACTUAL AND PROCEDURAL HISTORY

On January 2, 2019, Detective Smith received a referral regarding a potential fraudulent credit card charge that took place in Martinsburg on September 29, 2018. On January 8, 2019, Detective Smith went to a local address to contact a potential male suspect. Detective Smith was not wearing any type of official uniform, instead, he was wearing regular street clothes and driving an unmarked vehicle. During this visit, Detective Smith interacted with Ms. Dunbar, a female, who supplied him with a fake name. Following this interaction, Detective Smith learned that Ms. Dunbar lied and had given him a false name. On January 10, 2019, Detective Smith charged Ms. Dunbar with knowingly giving false or misleading information to an officer in violation of the City of Martinsburg Municipal Code section 509.05.[3] A bench trial was held in the Martinsburg Municipal Court, and Ms. Dunbar was ultimately convicted.[4] She appealed to circuit court where she requested a de novo bench trial.

---

[3] The original complaint was not included in the Appendix. Accordingly, we rely on the circuit court's order and the parties' briefs as to what particular section of the City of Martinsburg Municipal Code Ms. Dunbar was charged with violating.

[4] There were no documents included in the Appendix from the Martinsburg Municipal Court.

The circuit court held a de novo bench trial on May 29, 2020.[5]  During this bench trial, the City of Martinsburg called Detective Smith to testify as its sole witness in its case-in-chief.  Detective Smith testified to the following.  Detective Smith is employed by the City of Martinsburg as a Corporal assigned to the Detective Division for the Martinsburg Police Department.  On January 2, 2019, he received a referral from the Douglas County Sheriff's Department in Colorado regarding potential credit card fraud.  The alleged victim of the credit card fraud resided in Colorado and noticed fraudulent charges on his credit card, which had been made in Martinsburg, West Virginia, at the New China Restaurant.  The restaurant provided Detective Smith the delivery address associated with the fraudulent charge as well as the phone number for the order.  Accordingly, Detective Smith had his office run a report on the phone number provided to the restaurant.  The report indicated that the phone number was possibly affiliated with a male suspect.

On January 8, 2019, Detective Smith went to the delivery address to further investigate.  Upon his arrival, a female, Ms. Dunbar, answered the door, and Detective Smith asked to speak to the male suspect.  Ms. Dunbar claimed not to know the male suspect.  According to Detective Smith, he then advised Ms. Dunbar that he was a law enforcement officer and as to why he was at the residence, i.e. to investigate a credit card fraud report.  Ms. Dunbar identified herself as Danielle Shaffer and stated that she moved

---

[5] The bench trial was held via teleconference.  All parties consented to the bench trial being held in this manner.

4

into the apartment in October of 2018. Ms. Dunbar advised that she did not know who lived at the residence prior to herself. Detective Smith then asked Ms. Dunbar for her landlord's name and telephone number so that he may obtain information regarding the previous tenant. Ms. Dunbar initially agreed to give him the information, but subsequently decided that she did not feel comfortable giving the landlord's information to him. Detective Smith then left the residence.

After Detective Smith left the residence, he continued to investigate the alleged fraudulent credit card charge. From his additional investigation, Detective Smith learned that at least one utility bill had been transferred to Ms. Dunbar on September 28, 2018.[6] Detective Smith then spoke with the property manager who advised that the specific residence was currently being rented to Ms. Dunbar. Additionally, Detective Smith was informed that Danielle Shaffer was not listed on any of the lease documents for the residence. Detective Smith obtained a license photograph of Ms. Dunbar from the West Virginia Division of Motor Vehicles. Upon reviewing the license photograph, Detective Smith learned that Ms. Dunbar was the female he had spoken with on January 8, who had identified herself as Danielle Shaffer. Based upon Ms. Dunbar providing false information to him, on January 10, 2019, Detective Smith charged her with violating the City of Martinsburg Municipal Code section 509.05.

---

[6] The transcript of the bench trial indicates that Detective Smith testified that the utility bill was transferred on September 28, 2019; however, we believe that date to be an error.

On cross-examination, Detective Smith stated that he normally wore casual clothes and not his uniform while on duty. Moreover, he could not recall if he was driving an unmarked vehicle when he investigated the subject residence on January 8. Following Detective Smith's testimony, the City of Martinsburg rested.[7]

Ms. Dunbar testified on her own behalf and provided the following testimony. Although she signed a lease in September of 2018, she did not move into the residence until October of 2018. On January 8, 2019, Ms. Dunbar was home with her daughter. On this same day, she received a knock on her door. Upon answering, Ms. Dunbar was asked about a gentleman she did not know, and then asked who lived at the home. Ms. Dunbar "immediately got a little defensive" because of Detective Smith's mannerisms. Ms. Dunbar explained that

> there had been other instances where drug addicts were found in the backyard, and all types of stuff had been going on at this property. There was a lot of drug activity around here. I just moved here, you know, because it was cheaper. And I wanted to save for a house. So, you know, I was already kind of apprehensive.

Ms. Dunbar admitted to supplying a false name, Ms. Shaffer, but denied that Detective Smith had identified himself as an officer at that time. Detective Smith was not in uniform, but rather he was wearing regular jeans and a t-shirt. Additionally, Ms. Dunbar did not see

---

[7] On rebuttal, Detective Smith testified that upon learning Ms. Dunbar's real name and other information, he returned to the address to speak to her, but she did not answer. He then left a business card underneath the edge of the door mat in front of the door.

any police vehicle parked outside of the home. She "thought [Detective Smith] was just a regular guy, maybe associated with something of the previous people who lived there. The landlord even warned [her.]"

Detective Smith continued to ask Ms. Dunbar very personal questions about the property: who lived there, what persons were on the lease, and when did she move to the home. Only after Detective Smith asked these questions did he state that he was a law enforcement officer investigating credit card fraud. After Detective Smith identified himself as a law enforcement officer, Ms. Dunbar did not supply her real name. She "still wasn't convinced he was an officer. Although he had stated that [he was an officer], [she] still needed some level of proof, and [she] hadn't received that proof until [she] was arrested." When Ms. Dunbar asked Detective Smith for a business card, he told her that he did not have any on him at that time. At no point in the brief conversation was there anything to identify Detective Smith as a law enforcement officer including a badge or any other type of credentials. Even after Detective Smith left her residence on January 8, she never received a business card or any other identification.

A few days after this encounter, Ms. Dunbar was pulled over while driving home from her daughter's soccer game and was arrested in front of her children. She never heard from or saw Detective Smith again until after she was arrested for the underlying charge. Following Ms. Dunbar's testimony, she rested her case.

The circuit court issued its conviction order on June 5, 2020. In its order, the circuit court found that during the January 8, 2019 encounter, Ms. Dunbar gave a false name. The circuit court further concluded that later in the same conversation, "Detective Smith informed [Ms. Dunbar] that he was a law enforcement officer with the City of Martinsburg Police Department" and that "[a]fter being informed that Detective Smith was a law enforcement officer investigating criminal activity, [Ms. Dunbar] did not provide Detective Smith with her real name." Moreover, the circuit court found that upon learning that Detective Smith was in fact a law enforcement officer, Ms. Dunbar "made no attempt to cure her prior false statement when she had the opportunity to do so." Accordingly, the circuit court decided that Ms. Dunbar "knowingly provided false or misleading information to Detective Smith, a member of the City of Martinsburg Police Department, and therefore was in violation of § 509.05, City of Martinsburg Municipal Code." Furthermore, while acknowledging that Ms. Dunbar "did not have the obligation to cooperate absent some legal duty to do so[,]" the circuit court nevertheless concluded that "[m]aking a false statement to a police officer in the course of a felony investigation, however, is clearly obstruction." As a result of this conviction, Ms. Dunbar was fined $252.00. Ms. Dunbar now appeals the circuit court's June 5, 2020 conviction order.

## II.

## STANDARD OF REVIEW

This Court previously has held that

8

[i]n reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 1, *Pub. Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996). We now proceed with our examination of the parties' arguments with these standards in mind.

## III.

## DISCUSSION

Ms. Dunbar raises a single assignment of error on appeal to this Court: whether the circuit court erred in finding that she was required to notify an investigating law enforcement officer of her real name after learning that he was, in fact, a law enforcement officer. Specifically, Ms. Dunbar argues that she did not violate the City of Martinsburg Municipal Code by later failing to correct false information given to a law enforcement officer when the false information was given prior to knowing that she was speaking to a law enforcement officer. She further asserts that the specific facts of this case demonstrate that she was unaware that she was speaking to an officer when that officer was non-uniformed and she did not yet know the purpose of his very personal inquiries.

Conversely, the City argues that there was no error below. In particular, the City asserts that during the de novo bench trial, Detective Smith testified that he identified

9

himself prior to asking Ms. Dunbar for her name.[8]  Furthermore, the City contends that even in the light most favorable to Ms. Dunbar, the evidence shows that she violated the municipal code because she supplied a false name to an officer and later failed to correct the information.

We agree with Ms. Dunbar that under the very specific facts of the matter sub judice, she did not have an obligation to correct her false statement under section 509.05 of the City of Martinsburg Municipal Code.

First, we must look to the language of section 509.05 of the City of Martinsburg Municipal Code.  We previously have held that "[t]he rules for construing statutes also apply to the interpretation of municipal ordinances."  Syl. pt. 1, in part, *Town of Burnsville v. Kwik-Pik, Inc.*, 185 W. Va. 696, 408 S.E.2d 646 (1991).  *See also Cogan v. City of Wheeling*, 166 W. Va. 393, 395-96, 274 S.E.2d 516, 518 (1981) ("It is fundamental that the rules for construing statutes also apply to the interpretation of

---

[8] The City's argument that Detective Smith testified that he identified himself prior to asking Ms. Dunbar for her name is unavailing.  As we previously have stated herein, the circuit court below disagreed with Detective Smith's testimony and clearly found that Detective Smith informed Ms. Dunbar of his law enforcement status only after she had given him the false name.  Specifically, the circuit court stated, "*Later in the conversation*, Detective Smith informed [Ms. Dunbar] that he was a law enforcement officer with the City of Martinsburg Police Department." (Emphasis added).  No party has appealed this factual finding, and therefore, it will not be disturbed on appeal.  As such, the only issue before this Court is whether an individual has an obligation to correct false information given to a law enforcement officer when that same individual did not know of the law enforcement officer's position at the time the false information was given.

10

municipal ordinances. *Harvey v. City of Elkins*, 65 W. Va. 305, 64 S.E. 247 (1909); 6 *McQuillin Municipal Corporations* § 20.39 (3rd ed. 1980).").  Furthermore, "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the [city council]."  Syl. pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953).  In addition, we will apply rather than construe municipal ordinances that are clear and unambiguous and plainly express their underlying intent.  *C.f.* Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

The municipal code provision at issue in this matter, section 509.05 of the City of Martinsburg Municipal Code, provides that "[n]o person shall, at any time intercept, molest, or interfere with any officer or member of the Martinsburg Police Department, while on duty, *or knowingly give false or misleading information to a member of the Department*."  (Emphasis added).  Applying the rules above to the municipal ordinance at issue, we find nothing in the plain language of section 509.05 specifically requiring that an individual who gives false or misleading information to someone who the individual has no knowledge is a law enforcement officer has an obligation to later correct the false or misleading information if the individual subsequently is informed of the law enforcement officer's official position.  Accordingly, this Court will not presume that the City of Martinsburg intended such an outcome.  The evidence in this case did not establish that Ms. Dunbar gave false or misleading information to an individual she then knew to be a

11

law enforcement officer. In fact, in the case sub judice, the circuit court clearly found that at the time Ms. Dunbar gave a false name she had no knowledge that Detective Smith was a law enforcement officer.[9] Therefore, absent that knowledge, she did not "knowingly" give false information to a law enforcement officer and there is no language in the municipal ordinance that would place an obligation on her to correct that information once Detective Smith later informed her of his official position. As such, under the facts of this case, Ms. Dunbar did not violate section 509.05 of the City of Martinsburg Municipal Code.[10]

Moreover, our application of the municipal ordinance at issue is in conformity with this Court's previous interpretation of a similar state statute. In *State v. Srnsky*, 213 W. Va. 412, 582 S.E.2d 859 (2003), Brian Srnsky appealed a final order of the Circuit Court of Tucker County whereby he was convicted of one count of obstructing an

---

[9] Not only did the circuit court find that Ms. Dunbar did not acquire this knowledge until after she had given the false name, but also there is nothing to suggest that Detective Smith was driving an official vehicle or wearing his uniform. Moreover, during the subject conversation, Ms. Dunbar asked Detective Smith for a business card and he did not have one at the time.

[10] In the order upholding Ms. Dunbar's conviction, the circuit court found that the warrant for Ms. Dunbar's arrest was issued for knowingly giving false or misleading information to Detective Smith, in violation of section 509.05. The court later concluded that, as a matter of law, Ms. Dunbar violated that ordinance when she "knowingly provided false or misleading information to Detective Smith[.]" It does not appear that Ms. Dunbar was either charged with or convicted of violating that portion of section 509.05 that makes it a crime for any person to "intercept, molest, or interfere with any officer or member of the Martinsburg Police Department." Accordingly, that issue is not before us and our decision does not address such question.

officer.[11]  *Id.* at 414, 582 S.E.2d at 861.  Relevant to the current appeal, Mr. Srnsky's brothers owned a tract of land in Tucker County, West Virginia.  *Id.*  The brothers and their neighbors had a contentious relationship regarding discussions of a potential right of way. *Id.*  This contentious relationship culminated in criminal complaints being filed by the State Police in magistrate court against the brothers for trespass and Mr. Srnsky for an unknown charge.  *Id.* at 415, 582 S.E.2d at 862.  An arrest warrant for Mr. Srnsky was issued based on the complaint.  *Id.*  Thereafter, State Troopers, with the assistance of a deputy sheriff and a Department of Natural Resources officer, took steps to serve the warrant.  *Id.*  While attempting to serve the warrant, the officers came across a vehicle believed to be owned by one of the Srnskys.  *Id.*  The officers then saw four men coming towards them and "asked each person to identify himself and to explain what he was doing on the property."  *Id.* Two of the men in the group refused to "identify themselves or offer an explanation of what they were doing on the property[.]"  *Id.*  It was later established that one of the two men of the group was Mr. Srnsky.  *Id.*  Mr. Srnsky was then charged with obstruction.  *Id.* at 416, 582 S.E.2d at 863.  Ultimately, a bench trial was held in magistrate court at which time Mr. Srnsky was convicted of obstructing an officer.  *Id.*  He appealed his conviction to the circuit court where a de novo hearing was held.  *Id.*  The circuit court also found Mr. Srnsky guilty of obstruction.  *Id.*

---

[11] The appeal involved Mr. Srnsky and his two brothers; however, the facts of the brothers' appeals are not relevant to the matter before us.

13

On appeal to this Court, Mr. Srnsky contended that his "conviction for obstruction should be reversed because refusing to give one's name to a law enforcement officer does not constitute the offense of obstruction." *Id.* at 418, 582 S.E.2d at 865. Specifically, Mr. Srnsky was convicted of obstruction pursuant to West Virginia Code section 61-5-17(a) (eff. 2000) which, at that time, provided:

> Any person who by threats, menaces, acts or otherwise, forcibly or illegally hinders or obstructs, or attempts to hinder or obstruct, any law-enforcement officer, probation officer or parole officer acting in his or her official capacity is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than fifty nor more than five hundred dollars, and may, in the discretion of the court, be confined in the county or regional jail not more than one year.

The issue before this Court was "whether the refusal to give one's name to a police officer, standing alone, constitutes the offense of obstructing a law enforcement officer." 213 W. Va. at 420, 582 S.E.2d at 867. After examining caselaw from both West Virginia and other jurisdictions, we held that

> [r]efusal to identify oneself to a law enforcement officer does not, standing alone, form the basis for a charge of obstructing a law enforcement officer in performing official duties in violation of West Virginia Code § 61-5-17(a) (2001) (2002 Supp.). However, the charge of obstructing an officer may be substantiated when a citizen does not supply identification when required to do so by express statutory direction or when the refusal occurs after a law enforcement officer has communicated the reason why the citizen's name is being sought in relation to the officer's official duties.

*Id.* at Syl. pt. 4.

14

While we recognize that *Srnsky* involved the obstruction provision of West Virginia Code section 61-5-17[12] and the case before us involves a municipal code provision regarding giving false or misleading information, we nevertheless find it persuasive. In *Srnsky*, this Court found that a refusal to give one's name to a law enforcement officer constituted obstruction only if a law enforcement officer has communicated the reason why the individual's name is being sought in relation to the officer's official duties. Here, as the circuit court found, Ms. Dunbar was not aware that Detective Smith was a law

---

[12] Specifically, at issue in *Srnsky* was West Virginia Code section 61-5-17(a). Section 61-5-17 has been amended several times since the *Srnsky* case was decided. However, the relevant language is substantially similar and the amendments are not significant for the purposes of this appeal. At the time important to this appeal, West Virginia Code section 61-5-17 (eff. 2014), in relevant part, provided that,

> (a)     A person who by threats, menaces, acts, or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer, probation officer or parole officer acting in his or her official capacity is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $50 nor more than $500 or confined in jail not more than one year, or both fined and confined.

> . . . .

> (c) A person who, with intent to impede or obstruct a law-enforcement officer in the conduct of an investigation of a felony offense, knowingly and willfully makes a materially false statement is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $25 nor more than $200, or confined in jail for five days, or both fined and confined. . . .

West Virginia Code section 61-5-17 has been amended since 2014, however, those amendments are not relevant to this appeal.

enforcement officer at the time she gave the false name, and she did not know the purpose of his inquiry.

We therefore conclude that under the specific facts of this matter the circuit court erred in finding that Ms. Dunbar knowingly provided false or misleading information to Detective Smith in violation of section 509.05 of the City of Martinsburg Municipal Code when she made no attempt to cure her prior false statement upon learning that Detective Smith was a law enforcement officer.

**IV.**

**CONCLUSION**

For the above-stated reasons, we conclude that the Circuit Court of Berkeley County erred.  We, therefore, reverse the June 5, 2020 order of the Circuit Court of Berkeley County adjudging Ms. Dunbar guilty of violating section 509.05 of the City of Martinsburg Municipal Code by providing false information, and we remand to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.